Patrick H. McMAHON,
Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 60569.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1978.

Phillip J. Barkett, Jr., Dempster, Yokley, Fuchs & Barkett, Sikeston, for movant-appellant.

John D. Ashcroft, Atty. Gen., Kathryn M. Krause, Asst. Atty. Gen., Jefferson City, for respondent.

JOSEPH J. SIMEONE, Special Judge.

## I.

After an evidentiary hearing, the Circuit Court of Scott County, on September 21, 1976, denied movant-appellant, Patrick H. McMahon's motion to vacate filed pursuant to Rule 27.26, V.A.M.R. He appealed to the Springfield District of the Court of Appeals which affirmed the denial of the motion. We granted transfer of the cause and now review the case as on original appeal. Mo. Const. Art. V, § 10, as amended 1970; Rule 83.03. Our review is limited to whether the findings and judgment are clearly erroneous.

The issues presented in the case are: (1) whether a plea of guilty is involuntary when the defendant "believes" he is to receive a sentence recommended by the state or agreed to by the prosecutor and defendant, but is informed at the guilty plea proceeding that the court is not bound by any recommendation or agreement and the court at the time of the plea disabuses him of such belief, and (2) whether we should reverse the order of the trial court in denying the motion to vacate because the defendant alleges he was not given an opportunity to withdraw his plea.

As to issue (1) we hold that where the record of the guilty plea clearly refutes the defendant's belief that he would receive a lesser sentence than that imposed so as to make the belief unreasonable, the plea is not involuntary and (2) we decline to reverse the denial of the motion to vacate because the defendant under the guilty plea record was afforded the opportunity to withdraw his plea.

## II.

In early 1975, movant-appellant was charged with seven counts of burglary and six counts of stealing for having broken into several homes in Bollinger County and stealing certain items. A change of venue was granted to Scott County; arraignment was held and movant pleaded not guilty. The cause was set for trial on October 2, 1975. On September 30, 1975, the movant appearing with retained counsel pleaded guilty before the Circuit Court of Scott County. Lengthy plea discussions took place before Judge Stanley Grimm; a presentence investigation was ordered and sentencing was returnable at a later date. On January 13, 1976, the sentencing hearing was held and the court sentenced movant to ten years on each of seven counts of burglary and three years on six counts of stealing for a total of thirteen years "to run concurrently with any sentence [movant] may have received in St. Louis County . . ."[1]

On March 23, 1976, movant filed his motion to "vacate, set aside or correct" his sentence[2] imposed by the circuit court. He alleged that his convictions violated constitutional provisions because (1) the pleas were obtained by "trickery and the holding out of hopes which proved to be false and ill founded"; (2) his counsel "had movant believing that he would receive eight years on all the charges running concurrently with the St. Louis County sentence" and (3) "[he] was denied effective counsel because counsel misled [him] into thinking that he would get eight years for all the charges running concurrently."

Counsel was appointed on the motion to vacate and an evidentiary hearing was held on September 2, 1976, before Judge Marshall Craig, at which movant, his wife, his brother and retained counsel testified.[3]

The evidence and stipulations showed that Mr. McMahon tested at the "fifth grade level" on the standard oral reading paragraph test, had a score of 86 on the "Revised Beta IQ Test", and on another test level "tested out at the fourth grade level."

At the evidentiary hearing, Mr. McMahon testified that he was charged with the numerous counts of burglary and stealing and employed retained counsel to represent him on the charges. Movant lived in St. Louis and his attorney officed in Cape Girardeau. The thrust of his testimony was that he received a letter from his attorney relating to the trial setting; that he called the attorney and the attorney informed him that "the best we can get you for right now, [is] eight years, [which would] run it concurrently with St. Louis time." According to movant the attorney informed him that "[I]f I got five years in St. Louis, he'd get me five years down here to run concurrently. He said if I got eight, it would be eight

1. The court stated: "It is going to be the judgment and sentence of the Court, . . . that the defendant be sentenced on the charge of burglary . . . for a period of ten years . . . and on . . . the charge of stealing to a sentence of three years, or a total sentence of thirteen years, said sentence to run concurrently with any sentence he may have received in St. Louis County . . . it being my intention that the defendant would receive a thirteen-year sentence, eight years [or five] of which will run concurrently with the sentence in St. Louis, . . . ."

2. At the termination of the evidentiary hearing, movant's attorney stated that "[movant] does not desire that the sentence be vacated but merely corrected" to reduce the sentence to no more than eight years but not less than five.

3. At the beginning of the hearing movant amended his motion to include the allegation that he was not permitted to withdraw his pleas of guilty after the judge sentenced him because the court did not follow the recommendation of the prosecutor.

years." [4] Movant's attorney "told me to get down here if I wanted to plead guilty, take the deal he offered . . . ." Movant, his wife and brother went to Cape Girardeau that same day and conversed with the attorney who told him the

"best deal he could do for me is get me eight years, run it concurrently with St. Louis; that was the best he could do for me, if I wanted to, I had to sign these papers [A Petition to Enter Plea of Guilty]. I signed them."

"Then he turned around and he said I would have to convince the judge to enter this plea of guilty, and so we came right on down here." [Cape Girardeau]

McMahon testified that his attorney and the prosecutor had "talked it all over" and that "I would get eight years, run it concurrently with eight years, . . . ." He admitted that the prosecutor made the recommendation to the court as he promised, and believed that he would receive only eight years.

On cross-examination he recalled being told by the judge at the guilty plea hearing of the range of punishment—"ninety-something years, . . ." and remembered that his attorney stated that the prosecutor agreed to recommend "no less than five years, no more than eight years . . . ." He recalled that the prosecutor at the guilty plea did make the recommendation, and recalled that the prosecutor told him that the court did "not necessarily follow that recommendation . . . ." He also recalled that the judge at the guilty plea proceeding indicated to him that the court was "not bound by that recommendation, and I want you to clearly understand that." But movant persisted in testifying that he thought he had a "deal". "I believe the deal was a deal. That is all I know." He admitted knowing that the court was not bound by any attorney's recommendation. At the guilty plea proceeding the court stated:

"I'll say to you I don't have the intention of giving you one hundred years, which is the maximum that I can give you, but I want you to know that I really have the right to give you any number of years from two up to one hundred years, and *I don't want you to think you may get by with only five or eight years, do you understand that?*" The movant replied *"Yes, Your Honor."* (Emphasis added.)

Mr. McMahon testified that he was not given an opportunity to withdraw his plea, but neither did he seek to withdraw the plea at that time. On cross-examination movant acknowledged that he understood all the questions asked of him by the court at the plea proceeding.

As to the petition to plead guilty, movant testified that the paper or petition was blank when he signed it.

Movant's wife and brother corroborated much of the movant's testimony.

Movant's retained trial attorney testified at the evidentiary hearing. Contrary to the movant's testimony, he testified that he went over the petition to plead guilty "step by step". He also stated that movant was told that the prosecutor had agreed to recommend a sentence equal to the sentence in St. Louis County "providing it was not more than eight or less than five." The attorney informed movant that the judge "did not accept recommendations point blank and that . . . sentencing would simply be up to [the judge's] discretion." Also contrary to movant's testimony, the transcript of the plea proceeding shows that movant's attorney had gone over the Petition to Enter a Plea and that the blank spaces were all filled in before movant signed such petition.

A transcript of the plea proceedings taken on September 30, 1975, was introduced at the 27.26 evidentiary hearing. The guilty plea proceedings show that the trial court in twenty-one pages meticulously in-

---

**4.** Movant had received an eight year sentence in St. Louis County but that judgment was appealed to the St. Louis District. Pending appeal the attorney for the movant believed that he could obtain a reduction of the sentence to five years. And from what we perceive in this record that appeal was dismissed.

formed movant of all his constitutional rights, made it abundantly clear that although the prosecutor recommended five to eight year sentences to run concurrently with the St. Louis County sentence, the court was not bound by any recommendation or by any agreement reached by counsel with movant, that the court had no intention to permit defendant to "get by" with only five or eight years, that movant could be sentenced to a much longer period than eight years—one hundred—and finally that the court was not bound to impose a sentence to run concurrently with the sentence received in St. Louis County.

At the termination of the plea proceedings the sentencing judge found the movant guilty on all seven counts and ordered a presentence investigation returnable at a later date.

On January 13, 1976, the movant appeared for sentencing. At that time the movant sought probation; his attorney informed the court that "Pat" was "not the same man . . ." and the prosecutor reminded the court that at the time of the plea he made a recommendation and "would make the same recommendation that was made at that time." The court sentenced movant to concurrent ten years on seven counts of burglary and three years on six counts of stealing all to run concurrently with the sentence imposed by the Circuit Court of St. Louis County.

The trial court, in accordance with Rule 27.26, made findings of fact and conclusions of law. The order stated that movant alleged he was "led to believe that he would get eight years on all charges running with the eight years . . ." in St. Louis County and that he was so told by his attorney but that the court did not follow the recommendations. The order recited that a lengthy record of the guilty pleas was made and "went over the fact . . ." that the court was not bound by the recommendations but that movant might be sentenced to a "much longer term than eight years . . . ." At the time, no request was made to withdraw the plea. The court stated that the defendant relied on his "subjective" state of mind, thinking he would receive only eight years but the "record reflects that there was no reasonable grounds for the movant to form a belief that he would get eight years . . . ."

"The movant was not misled by his attorney or by the Court. He insisted at the hearing that a 'deal' is a 'deal'. That might be true if in fact there was a deal. A recommendation is not a deal and the Court made that very clear to the movant at all times. He had no deal with the court, . . . It was made clear to him that the length of the sentence was entirely up to the Judge . . . ."

The court concluded that the movant was not entitled to the relief he sought because the plea was "voluntarily and understandingly made with clear and adequate information and knowledge of the consequences." The trial court therefore denied the motion.

### III.

On this appeal, movant makes two points. (1) the trial court erred in finding that the pleas were entered knowingly and voluntarily because (a) such finding is against the weight of the evidence and (b) the finding erroneously applies the law because the record shows that appellant believed he would receive a sentence concurrent with the sentence in St. Louis County which would be not more than eight years and (2) the trial court erroneously applied the law in not permitting the movant an opportunity to withdraw his plea when the court "decides that he cannot follow the recommendation of the prosecuting attorney."

He argues that his trial attorney told him that he would have to "convince" the judge to accept the plea and for that reason he answered the questions "as he was supposed to . . . ."

As to his second point he urges this court to adopt Rule 11(e)(4) of the Federal Rules of Criminal Procedure and urges that the sentencing judge should either accept or reject the bargain, and if rejected, the court should give him the opportunity to with-

draw his plea. He reemphasizes this point in his additional brief filed in this court.

## IV.

■ As to his first point, the test of whether a plea is voluntarily and intelligently made is not whether a particular ritual is followed or whether each and every detail is explained to a defendant but whether the plea in fact is intelligently and voluntarily made. *Baker v. State*, 524 S.W.2d 144, 147 (Mo.App.1975); *Flood v. State*, 476 S.W.2d 529, 534 (Mo.1972); *Hulstine v. State*, 533 S.W.2d 228, 231 (Mo.App. 1975); *Abrams v. State*, 521 S.W.2d 177, 179 (Mo.App.1975). There is no requirement that the court explain every technical element of an offense. The expectation that a defendant will receive a lighter sentence does not make a plea involuntary. A disappointed hope of a lesser sentence does not make a plea involuntary. *Abrams*, 521 S.W.2d at 179.

The record here clearly shows that at the time of his plea the movant understood the nature of the charges, the range of punishment, the fact that the court was not bound by any recommendation of the prosecutor, that no threats or binding promises were made, and that he was entitled to all of his constitutional rights. The fact that he "believed" he would receive sentences concurrent with and not exceeding the five or eight year sentence in St. Louis County is not controlling.

■ The "subjective" test urged upon us is not the test of voluntariness. Any test of whether a person, in fact, has harbored a particular belief is necessarily subjective. While an individual may proclaim he had a certain belief and may subjectively believe

it, if it was unreasonable for him to entertain such a belief at the time of the plea proceeding, relief should not be granted. The subjective test has to be viewed in the light of the reasonableness of the claimed belief. See *Barylski v. State*, 473 S.W.2d 399, 401 (Mo.1971); *State v. Rose*, 440 S.W.2d 441, 445 (Mo.1969). Otherwise the granting of every 27.26 motion would be automatic upon the movant's assertion that his guilty plea resulted from a subjectively mistaken belief. The test to be applied must be viewed in the light of the reasonableness of the claimed belief. Where there is no reasonable basis for the belief in light of the guilty plea record, movant is not entitled to relief. *Barylski*, supra.

■ Hence, whatever the defendant's subjective belief may have been as to receiving concurrent sentences of eight years—the same as in St. Louis County— the trial court clearly disabused the movant of that belief during its meticulous questioning at the time of the guilty plea. *Cf. Pauley v. State*, 487 S.W.2d 565, 567 (Mo. 1972); *Parsons v. State*, 528 S.W.2d 162, 163 (Mo.App.1975); *Brown v. State*, 526 S.W.2d 55, 56 (Mo.App.1975).[5] Under this record which shows that there was no reasonable basis for the belief that movant was to receive an equivalent sentence as that imposed in St. Louis County, we conclude that the plea was not involuntary.

Appellant relies on *Griffith v. Wyrick*, 527 F.2d 109 (8th Cir. 1975). In that case, defendant at the time of the plea stated he did not commit the offense charged, but was beaten and "maced" and pleaded to escape the custody of the jailers. There was no independent evidence offered to

---

**5.** Appellant also relies on *Burgin v. State*, 522 S.W.2d 159 (Mo.App.1975) because movant testified he was told by his attorney he would have to "convince" the court to accept the plea, and this was not denied by the trial attorney. *Burgin*, however is not controlling. In *Burgin*, movant alleged that he had been promised a two-year sentence and was told by his counsel to answer in the negative when the court asked if any "deal" had been made. The appellate court held that the withholding from the trial judge of a promise destroys the purpose pro-

moting the inquiry by the court. The gist of the opinion is that a promise by anyone other than the judge is not binding and defendant should not be misled by a promise not within the prosecutor's power to perform. Unlike *Burgin*, the appellant here stated he was instructed not to lie and the court clearly advised the movant he was not bound by any promise. See *Giggar v. State*, 547 S.W.2d 870, 871 (Mo. App.1977); *Mainord v. State*, 541 S.W.2d 779, 781 (Mo.App.1976); *Williams v. State*, 560 S.W.2d 887, 888 (Mo.App.1978).

show otherwise. The United States Court of Appeals affirmed an order vacating sentence, and in the course of the opinion stated that as an additional factor for relief believed that the petitioner was influenced to plead guilty by his belief that a five-year sentence would be given. "In our view, this understanding was not an unreasonable one and is an additional factor supporting a finding that the plea of guilty was an involuntary one." But this case is not controlling under the facts here.

The trial court on this 27.26 hearing had before it the transcript of the guilty plea proceeding. The court could see that before the pleas were accepted it was made abundantly clear to movant that the state's recommendation was simply that, that any statements by trial counsel as to what plea agreement was made was not binding on the court, and that the court did not want movant to think that he would "get by" with only five or eight years. Movant reiterated his understanding that the court was not bound by any recommendation or agreement, repeatedly acknowledged that he understood that the court could assess punishment in excess of any recommendation and assured the court of his awareness that the judge was not agreeing to impose the recommended sentences. In view of the testimony, the evidence at the hearing, the meticulous interrogation of the movant at the plea proceedings, and his responses thereto, it appears unreasonable to conclude that movant could genuinely have been possessed of a reasonable belief that a plea agreement had been reached which would be binding on the court.

The appellant's first point therefore is without merit.

## V.

As to appellant's second point, he complains that the trial court erred in overruling his motion because the court did not provide him with an opportunity to withdraw his plea after the court was advised of the plea agreement and after the court determined that it could not and did not follow the recommendation of the prosecutor.

As to this point, *Schellert v. State*, 569 S.W.2d 735, handed down this date, deals with the issue of providing an opportunity to a defendant to withdraw a plea when the court rejects a plea agreement. In *Schellert*, we discussed the principles relating to "plea bargaining" and its beneficial aspects and its necessity in the criminal justice system. In *Schellert* we specifically held that (1) the trial judge should not accept a plea of guilty without first inquiring whether there is a plea agreement and, if there is one, requiring that it be disclosed on the record "in open court" (2) if the plea agreement contemplates the granting of sentence concessions by the trial judge, he should give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant sentence concessions, and (3) "[i]f the court rejects the plea agreement, either at the time of the plea proceedings or at the time of sentencing, the court shall, on the record, inform the parties of that fact, advise the defendant personally in open court, . . . that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

■ *Schellert*, in effect adopts prospectively the principles of Rule 11(e)(4), Fed.R. Crim.P. and now requires the court, in addition to the traditional inquiries at a guilty plea,[6] to provide an opportunity to the defendant to withdraw his plea when the court rejects the plea agreement.

Such a procedure as outlined in *Schellert* brings the existence of a plea agreement "out into the open" and provides methods for the court to accept or reject the plea agreement. Advisory Committee Notes to Rule 11, Fed.R.Crim.P., 18 U.S.C.A. at 20. And such a procedure conforms in substance to the ABA Standards Relating to

---

6. See *Flood*, 476 S.W.2d at 535–536 [Donnelly, J., concurring].

Pleas of Guilty, Standard 2.1(a)(ii)(5), Approved Draft, 1968.

But the principles laid down in *Schellert* do not aid the movant here and do not require a reversal of the trial court in denying the appellant's motion to correct sentence. *Schellert* is quite distinguishable on its facts. The record of the guilty plea proceeding here complies in essence with the principles laid down in *Schellert.* Under the record here the defendant was meticulously warned that the trial court was not bound by any agreement or recommendation. The court disabused the defendant of the idea that he would receive a sentence of only five or eight years. The trial court wanted to "make clear" that "I don't want you to feel that . . . I am going to give you between five and eight years . . . ." The trial court clearly informed movant that "I don't want you to think you may get by with only five or eight years, do you understand that?" The defendant replied in the affirmative. Then the trial court significantly inquired "You still want to plead guilty knowing that?" The defendant replied, "Yes, Your Honor". The trial court at the plea proceedings inquired whether movant still desired to plead guilty knowing that he would not "get by" with only five or eight years. Under these circumstances, the trial court gave the defendant an opportunity to withdraw his plea. Movant's answer to the question "You still want to plead guilty knowing that . . . " could have been "no", so that the guilty plea would have been ineffective. Unlike *Schellert,* therefore, we believe that the movant was afforded an opportunity to withdraw his plea because the disposition of the case was to be less favorable to the defendant than that contemplated by the plea agreement. The opportunity to withdraw here came at the guilty plea proceeding. We believe that the better practice is for the trial court at the time of sentencing and after receiving a presentence investigation to then inform the defendant and counsel that the court rejects the plea agreement and at that time afford the defendant an opportunity to withdraw his plea.

The proceedings set forth in the guilty plea transcript attest to the fact that movant was afforded an opportunity to change his mind about pleading guilty when it was explained that the court was not bound by any recommendation or agreement and that he was not going to "get by" with five or eight years. Even when movant appeared for sentencing three months after the plea proceeding, defendant was afforded an ample opportunity to speak and then sought only probation. It was not until the motion to vacate was filed that he finally sought to withdraw his plea.

We hold therefore that under the circumstances of this record that the movant is not entitled to 27.26 relief.

Under this record the order of the trial court denying the appellant's motion to vacate or to correct sentence was not clearly erroneous. Rule 27.26(j).

The judgment is affirmed.

All concur.