**STATE of Missouri, Respondent,**

v.

**Bob ENGLAND, a/k/a Robert England, Appellant.**

No. 11285.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 27, 1980.

Motion for Rehearing or to Transfer
Denied March 24, 1980.

Application to Transfer Denied
May 1, 1980.

Joseph B. Phillips, Phillips & Phillips, Stockton, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Kathleen Mills, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

Defendant, charged with burglary and stealing, entered a plea of guilty. Before imposition of sentence defendant moved to withdraw his plea. Rule 29.07(d).[1] The trial court denied the motion and sentenced defendant to two years' confinement for each offense with the terms of confinement to run consecutively.

Defendant asserts, for reasons to be discussed later, that the trial court erred in denying his motion to withdraw the guilty plea. Before taking up defendant's assertion it is necessary to consider the state's contention that this court is without jurisdiction to entertain this appeal. That contention is unsound.

The state takes the position that the order of the trial court denying defendant's motion is not an appealable order. The state relies primarily upon *State v. Myers*, 588 S.W.2d 236 (Mo.App.1979). *Myers* is distinguishable. There the motion to withdraw the guilty plea was made *after* imposition of sentence. The court dismissed the appeal "without prejudice to further proceeding by Rule 27.26 motion."

Where a motion to withdraw a plea of guilty is made *before* imposition of sentence, an order denying the motion is an appealable order. *State v. Nielsen*, 547 S.W.2d 153, 154 (Mo.App.1977). See also *State v. Begley*, 534 S.W.2d 632, 634[1] (Mo. App.1976); *State v. White*, 429 S.W.2d 277, 281[6] (Mo.App.1968). Indeed in *State v. Skaggs*, 248 S.W.2d 635 (Mo.1952), where the motion to withdraw the plea was made *after* sentence was imposed, the court entertained the appeal and at p. 636 said, "The action of the trial court in refusing to permit the withdrawal of a plea of guilty is reviewable on appeal to this court."

Rule 32(d) of the Federal Rules of Criminal Procedure is the counterpart of Rule 29.07(d). An order denying a motion, filed under that federal rule, to withdraw a plea of guilty is an appealable order whether the motion is made *before* imposition of sentence, *U. S. v. Morrow*, 537 F.2d 120, 145 (5th Cir. 1976); *Kadwell v. U. S.*, 315 F.2d 667 (9th Cir. 1963); *U. S. v. Colonna*, 142 F.2d 210 (3rd Cir. 1944), or *after* imposition of sentence, *U. S. v. Washington*, 341 F.2d 277, 281 (3rd Cir. 1965).

The state also argues that the notice of appeal is defective. Rule 30.01(e) lists certain things which the notice of appeal "shall specify," one of which is, "the judgment or order appealed from." The instant notice of appeal states that the defendant "appeals from the judgment entered in this action on the 17th day of January, 1979." The state's brief says, "Defendant does not appeal the order of the court [denying the motion to withdraw the guilty plea] but rather appeals the judgment, i. e., the conviction and sentence."

Both the denial of the motion to withdraw the guilty plea and the entry of judgment and sentence were effected on January 17, 1979. Defendant's notice of appeal, in addition to containing the language pre-

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

   Rule 29.07(d) (formerly Rule 27.25) reads: "(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

viously mentioned, recited that the court, on that date, denied his motion to withdraw his plea of guilty.

Missouri appellate courts are lenient in gauging the adequacy of a notice of appeal and usually tolerate technical imperfections. See *State v. Perkins*, 543 S.W.2d 805, 806[1] (Mo.App.1976). (Defendant was convicted of rape and robbery; notice of appeal, stating conviction was for rape and sodomy, held adequate.) See also *State v. Todd*, 433 S.W.2d 550, 554[4] (Mo.1968); *State v. Hicks*, 376 S.W.2d 160, 161[1] (Mo.1964).

Rule 3(c) of the Federal Rules of Appellate Procedure is the counterpart of Rule 30.01(e). In discussing the federal rule, a leading authority states: "Defects in the wording of the notice of appeal are generally overlooked if the true intentions of the appellant can fairly be ascertained, if the courts have not been misled, and if the other parties have suffered no prejudice." Wright, Fed.Prac. & Proc., Vol. 16, § 3949, p. 355.

This court holds that the order of the trial court denying defendant's motion to withdraw his plea of guilty, made before imposition of sentence, is an appealable order and that the instant notice of appeal is not so defective that it invalidates the appeal.

Defendant's contention is that the trial court erred in denying his motion to withdraw his guilty plea for the reason that the plea agreement "created a reasonable expectation" in defendant that if the presentence report recommended parole, the court would follow that recommendation and when the court, after receiving that recommendation, refused to follow it, defendant had a right to withdraw his guilty plea.

The information, filed on August 15, 1977, in addition to alleging a prior conviction, charged the defendant with committing the instant offenses on June 16, 1977. On August 17, 1977, defendant entered a plea of not guilty to each offense.

On October 18, 1978, a hearing was held. The state appeared by prosecuting attorney James P. Anderton and the defendant appeared in person and by his attorney Joseph B. Phillips. Attorney Phillips informed the court that defendant desired to withdraw the not guilty pleas. The defendant took the stand and testified that he had discussed the matter with attorney Phillips and had filled out and signed a questionnaire which gave him information concerning the effect of a guilty plea. The questionnaire was received in evidence. Included in the questionnaire were questions 16 and 17, and defendant's answers thereto, which read:

"16. Have you been told or led to believe by any person, including any law enforcement officer, prosecuting attorney, your attorney, or a friend or relative that if you entered a plea of guilty that any certain punishment would be imposed? *No.*

"17. Do you understand if any such person has made any such statement to you, that such statement is only their opinion, or their recommendation and is *not* binding on the court? *Yes.*"

The following then occurred:

"THE COURT: Has there been any plea bargaining in connection with this case?

MR. ANDERTON: Your Honor, just to the limited extent the State had agreed to recommend to Your Honor that presentence investigation be done on the defendant prior to sentencing and that you consider the report from the probation and parole department in your sentence. That was the State's only agreement.

THE COURT: Is that the way you understand it, Mr. Phillips?

MR. PHILLIPS: That was my understanding of the agreement.

THE COURT: Is that the way you understand it, Mr. England?

THE DEFENDANT: Yes, sir.

THE COURT: You're not relying on any representations made to you in any manner by the State other than the fact that they would recommend a presentence investigation to be made?

THE DEFENDANT: Yes, sir.

THE COURT: And you want to enter a plea of guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Based on your testimony and based on the questions and answers contained in defendant's exhibit number one [the questionnaire].

THE DEFENDANT: Yes, sir."

The court accepted the plea and ordered a presentence investigation.

On December 20, 1978, the presentence investigation report was filed. In that report the state probation and parole officer said: "This officer believes that defendant should be granted a suspended execution of sentence and be placed on probation."

On January 17, 1979, another hearing was held at which the defendant appeared personally and with attorney Phillips. There was no appearance for the state. Attorney Phillips said he would "waive the absence of the prosecutor."[2] The following then occurred:

"THE COURT: Was there any recommendation made at the time he entered his plea?

MR. PHILLIPS: I think the recommendation of the Prosecutor, from my understanding of it, was that he requested the Court to order a presentence investigation and he would abide by the—

THE COURT: There's been no plea bargaining then?

MR. PHILLIPS: Well, that was the plea bargaining, that he would have the Court make a presentence—recommend to the Court that the Court make a presentence investigation and if the investigation recommended parole he was not opposed to it."

The court then informed the defendant that the presentence investigation report had been filed and that it recommended probation "but I think you might as well know that I am not going to go along with it." In response to a question by the court, the defendant stated he had no lawful cause for judgment and sentence not to be pro-

nounced at that time. A recess was granted for defendant to confer with attorney Phillips. Following that recess Phillips asked the court what sentence the court was going to impose and the court responded, "You may inquire but I am not going to tell you because I think you are just going to play games with me." Thereupon Phillips said, "I move to withdraw our plea of guilty under the recent case in the supreme court about plea bargaining arrangements." The motion was denied and the court rendered judgment and pronounced sentence.

The sole authority cited by defendant in support of his contention is *Schellert v. State*, 569 S.W.2d 735 (Mo. banc 1978). In *Schellert* the prosecutor told the defendant that if he pleaded guilty the state would recommend probation. Although the trial court informed the defendant that the court was not bound by the recommendation, the court did not inform the defendant that the recommendation was not going to be followed. The court sentenced defendant to five years' imprisonment. The supreme court vacated the conviction, set aside the guilty plea, and remanded the case to the trial court for the entry of a new plea.

The court stated, at p. 739:

"If the plea agreement contemplates the granting of sentence concessions by the trial judge, he should give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant sentence concessions. If the court rejects the plea agreement, either at the time of the plea proceedings or at the time of sentencing, the court shall, on the record, inform the parties of that fact, advise the defendant personally in open court, or on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity then to withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may

**2.** In *Lantz v. United States*, 417 F.2d 329 (5th Cir. 1969), in a post-conviction proceeding, the defendant sought to vacate the sentence on several grounds, one of which was that there was no United States Attorney present at his sentencing. In denying relief and in disposing of that ground, the court of appeals said: "The absence of the United States Attorney from the sentencing procedures was in no way prejudicial to appellant."

be less favorable to the defendant than that contemplated by the plea agreement."

The court stated, at p. 740: "This decision is to apply to the instant case and prospectively only."

*Schellert* was handed down on September 12, 1978. The guilty plea in the instant case was entered in October 1978 and the motion to withdraw the plea was made in January 1979.

On the same day *Schellert* was decided, the court handed down *McMahon v. State*, 569 S.W.2d 753 (Mo. banc 1978). In *McMahon*, at p. 759, the court summarized the holding of *Schellert* and, significantly, said this:

"*Schellert*, in effect adopts prospectively the principles of Rule 11(e)(4), Fed.R. Crim.P. and now requires the court, in addition to the traditional inquiries at a guilty plea, to provide an opportunity to the defendant to withdraw his plea when the court rejects the plea agreement."[3]

Fed.R.Crim.P. 11(e)(4) reads:

"(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

The weight of federal authority holds, contrary to *Schellert*, that the trial court's non-acceptance of the government's sentence recommendation does *not* constitute a rejection of the plea agreement within the meaning of Fed.R.Crim.P. 11(e)(4), where the defendant bargained merely for a sentence recommendation, rather than disposition, and knew that the recommendation would not be binding upon the trial court and the government carried out the agreement by making the recommendation. Mere non-acceptance by the trial court of the government's recommendation does not, according to the majority view, constitute a rejection of a plea agreement of the type defined in Fed.R.Crim.P. 11(e)(1)(B), quoted marginally.[4] *U. S. v. Gaertner*, 593 F.2d 775 (7th Cir. 1979); *U. S. v. Henderson*, 565 F.2d 1119 (9th Cir. 1977); *U. S. v. Savage*, 561 F.2d 554 (4th Cir. 1977). Contra, *U. S. v. White*, 583 F.2d 819 (6th Cir. 1978).

■ In the instant case what did prosecutor Anderton agree to do? There are two versions, the first acknowledged by all parties in the hearing on October 18, 1978, and the second unilaterally described by defense counsel at the hearing on January 17, 1979.

According to the first version the prosecutor agreed to recommend to the court that a presentence investigation be conducted and that the court "consider the report from the Probation and Parole Department in your sentence." The presentence investigation was conducted and the record shows that the court was fully aware of the contents of that report prior to and at the time the sentence was imposed. The court considered the report,[5] although he did not

---

**3.** The counterpart to Rule 11(e)(4) Fed.R. Crim.P. is Rule 24.02(d), which became effective, by Order of the Supreme Court of Missouri, on January 1, 1980.

**4.** Federal Rule 11(e)(1)(B) reads:

"(e) Plea agreement procedure

"(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the

attorney for the government will do any of the following:

(A) . . .

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) . . .

**5.** The presentence report showed that the defendant has six prior convictions. The offenses included rape, escape, assault and battery, forgery, tendering bogus checks, and driving while intoxicated. The sentence imposed for each of

follow its recommendation. In *Schellert* the prosecutor made a recommendation and the court did not follow that recommendation. In the case at bar the prosecutor made a recommendation and the recommendation was carried out by the court.

According to the second version the prosecutor agreed to "recommend to the court that the court make a presentence investigation and if the investigation recommended parole *he was not opposed to it.*" Even if defendant is accorded the benefit of the second version, the prosecutor lived up to the bargain. The prosecutor made the recommendation that a presentence investigation be conducted and it was conducted. The presentence report did recommend parole and the prosecutor did not oppose that recommendation. It is true that the prosecutor was not present but it is also true that he did not oppose the recommendation. The federal authorities previously cited would consider the second version to fall within the type of plea agreement defined in Fed.R.Crim.P. 11(e)(1)(B), set forth in footnote 4. Those authorities hold that the trial court's non-acceptance of a recommendation does not constitute a rejection of the plea agreement where, as here, the defendant did not bargain for a specific disposition but rather for non-opposition by the prosecutor to the recommendation and where, as here, the defendant knew that the recommendation would not be binding upon the trial court. The nature of the agreement, as set forth in the second version, differs from that which confronted the court in *Schellert*. In *Schellert* the prosecutor recommended a specific disposition—probation. Under the second version the prosecutor did not recommend a specific disposition. He merely promised not to oppose one. This court, however, decides this appeal on the basis that the first version is the correct version.

The agreement between the prosecutor and the defendant was made before the plea was entered on October 18, 1978. On that date the provisions of the plea agreement were made a matter of record. The second version, voiced three months later, was simply counsel's erroneous recollection of what the agreement was. Even measured by the stringent requirements of *Schellert*, the first version was fully performed.

■■■■ In some factual situations the principles of *Schellert* (and the requirements of the rules mentioned in footnote 3) make it the *duty* of the trial court to permit withdrawal of a guilty plea. In situations not governed by those sources, the withdrawal of a guilty plea is governed by Rule 29.07(d). That rule, set forth in footnote 1, deals with withdrawal of guilty pleas both before and after sentencing. In the latter situation, the court may permit the withdrawal "to correct manifest injustice." In *State v. Nielsen*, 547 S.W.2d 153, 158 (Mo. App.1977), the court said, "Our research fails to disclose any decisions in Missouri which articulate the standard prior to sentence." [6] In *Nielsen* the court dealt with a presentencing motion to withdraw a guilty plea. The court held that withdrawal at that stage is not a matter of absolute right and that a motion under Rule 29.07(d) seeking that relief is addressed to the sound discretion of the trial court. The appellate court will not interfere with a denial of the motion unless the defendant demonstrates that the trial court abused its discretion.

The instant record fails to show that the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea.

The order of the trial court denying defendant's motion to withdraw his plea of guilty to each offense is affirmed and the

the instant offenses was the statutory minimum.

**6.** In Wright, Fed.Prac. & Proc., Vol. 2, § 538, p. 472 there is a discussion of Fed.R.Crim.P. 32 which is the counterpart of Rule 29.07(d).

Some of the federal cases there cited hold that leave to withdraw a guilty plea should be more freely granted before sentencing than after sentencing for both technical and practical reasons discussed in the text.

judgment and sentence thereon are affirmed.

TITUS, GREENE and PREWITT, JJ., concur.