**Robert Wayne DECK, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 13686.**

Missouri Court of Appeals, Southern District, Division Three.

Dec. 12, 1984.

Lenzie L. Leftridge, Jr., Flat River, for appellant.

John Ashcroft, Atty. Gen., George Cox, Special Pros. Atty., Jefferson City, for respondent.

HOGAN, Judge:

Petitioner Robert Wayne Deck (defendant) pled guilty to the offense of second-degree murder as defined and denounced by former § 565.004, RSMo 1978, and his punishment was assessed at imprisonment for 25 years. Thereafter, defendant filed a motion to withdraw his plea in a postconviction proceeding under Rule 27.26.[1] A hear-

---

1. References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (15th ed. 1984), except where otherwise noted.

ing has been held, the trial court has denied relief and the defendant now appeals.

The defendant shot and killed one Samuel Daniel "Bud" Updegraf in Dix Food Mart in Lutesville, Missouri, on October 31, 1980. Five shots were fired. Four struck the victim, who was the defendant's father-in-law. The defendant was thereafter charged with capital murder, as defined and denounced by former § 565.001. On April 1, 1981, the defendant appeared with employed counsel before Honorable A.J. Seier, a regular and acting judge of the 32nd Judicial Circuit. The State was represented by Mr. Neil MacFarlane, an Assistant Attorney General. Mr. MacFarlane announced to the court that he had discussed a plea bargain with defendant's counsel; as a result, Mr. MacFarlane asked leave to file an amended information reducing the charge from capital murder to murder in the second degree. Leave to file the amended information was granted. The amended information, which correctly charges the defendant with second-degree murder, was then filed. The defendant was asked if he understood the charge and he answered: "Yes, sir." The court then proceeded as follows:

"THE COURT: Do you understand that charge, Mr. Deck?

THE DEFENDANT: Yes, sir.

THE COURT: What are you charged with, sir?

THE DEFENDANT: Second degree murder.

\*    \*    \*    \*    \*    \*

THE COURT: What plea would you like to enter?

THE DEFENDANT: Guilty.

THE COURT: Would you please raise your right hand and be sworn."

Defendant was thereupon sworn. The court then addressed the defendant:

"Q. (BY THE COURT:) Now, Mr. Deck, your attorney has handed me a Petition to Enter a Plea of Guilty, which consists of three pages, and I'm sure you've had sufficient time to go over those questions in that Petition with him, have you not?

A. Yes, sir.

Q. Did you understand all these questions?

A. Yes, sir.

Q. Did you answer all of them to the best of your ability?

A. Yes sir.

Q. Insofar as Mr. Syler's representation of you, do you have any gripes or complaints about his representation?

A. No, sir; he did a good job.

Q. Has he done everything you told him to do?

A. Yes, sir.

Q. Has he failed or refused to do anything?

A. No, sir.

Q. Do you believe that he has sufficiently investigated this case so that he may competently advise you on how to proceed in this matter?

A. Yes, sir.

\*    \*    \*    \*    \*    \*

Q. Now, Mr. Deck, your Petition indicates you're thirty-five years of age and that you completed the 12th grade; is that correct?

A. Yes, sir.

\*    \*    \*    \*    \*    \*

Q. Now, in paragraph 5, you state, 'I represent to the Court the following acts in connection with the charge made against me,' and then someone has written, 'On October 31, 1980, I killed Samuel Daniel 'Bud' UpDegraf by shooting him with a gun.' Is that what you did that makes you think you're guilty of this charge, Mr. Deck?

A. Yes, sir.

Q. *You did kill Mr. UpDegraf?*

A. *Yes, sir.*

Q. *You shot him with a gun?*

A. *Yes, sir.*

Q. *And you did this on October 31, 1980?*

A. *Yes, sir.*

Q. *And you did this in Bollinger County?*

A. *Yes, sir.* (Our emphasis.)

\*    \*    \*    \*    \*    \*

Q. All right. Now, Mr. Deck, you know there are a number of defenses to the charge of murder in the second degree. *Have all of them been explained to you by [trial counsel]?*

A. *Yes, sir.*

Q. *Do you have any question about any of the defenses that you may possibly have to this charge?*

A. *No, sir."* (Emphasis added.)

\*    \*    \*    \*    \*    \*

What we have recited is sufficient to show that defendant was present with employed counsel; that the charge was read to him; that he assured the court he had no question about the nature of the crime with which he was charged, and that upon oath in open court defendant admitted his guilt. It was further explained to the defendant that by pleading guilty he was giving up his Sixth Amendment rights: 1) to a speedy and public trial; 2) to a trial by jury; 3) to a confrontation of witnesses, and 4) to compulsory process. The defendant unequivocally stated he understood he was giving up those rights and further understood that he would have no opportunity to testify in his own behalf. Sentencing was deferred. The State recommended a life sentence but the trial court sentenced the defendant to 25 years imprisonment.

The whole substance of defendant's petition under Rule 27.26 is that his plea of guilty was not knowingly and voluntarily given because the intent which is a necessary element of second-degree murder was never explained to him, and he was gulled into believing that he would be paroled in two years. Since *McMahon v. State,* 569 S.W.2d 753 (Mo. banc 1978), was handed down, our courts have consistently held that Rule 24.02 does not require the trial court to explain every technical element of the offense charged before it accepts a plea of guilty. *Id.,* 569 S.W.2d at 758; *Hicks v. State,* 633 S.W.2d 229, 231 (Mo.App.1982). Apparently aware of those rulings, defendant contends his counsel was ineffective because counsel never explained the necessary intent.

As indicated, the defendant was originally charged with capital murder. As best we can determine the facts of the situation

the defendant and his wife were in the process of a dissolution of their marriage; he was having financial difficulties and, as one would expect, was having trouble with his father-in-law, the victim. About 5 p.m. on October 31, 1980, defendant went to the food market where his wife was working. He walked in the front door with a pistol in his hand. There was some evidence that defendant cursed his father-in-law. The victim reached out for the pistol; the defendant claimed his victim attempted to grasp the pistol by the trigger guard, and therefore it was the victim's action, not his, which caused the pistol to discharge. There was no dispute, however, that the pistol discharged five times and that the victim was struck by four of the shots. Defendant insisted to his trial counsel that he had entered the food mart without a fixed intention to take human life. Upon the trial of this motion defendant again asserted that he had no fixed intention to cause his father-in-law's death. Reduced to its essence, the defendant's bitter complaint is that he stands convicted of intentionally taking the life of another when no such thought ever crossed his mind.

At the time defendant entered his plea it was the law that intent, in the context of second-degree murder, could be found when the death could reasonably have been expected to follow from a defendant's voluntary act, irrespective of any subjective desire on the part of the defendant to cause the death of his victim. *State v. Powell,* 630 S.W.2d 168, 170 (Mo.App.1982); *State v. Gillam,* 588 S.W.2d 13, 16 (Mo.App. 1979). Moreover, when a defendant's explanation of his act was so inconsistent with the physical facts and the conduct of the defendant as to be unreasonable and incompatible with the common experience of mankind, his naked assertion that he did not have a purpose to cause death or great bodily harm did not require an instruction on the subject of killing by accident or misfortune, much less compel a jury finding that the killing was excusable. *State v. Bevineau,* 460 S.W.2d 683, 688[10] (Mo. 1970).

From reading the transcript of the hearing, we are convinced that the law was so explained to the defendant by his trial counsel. Considering both defendant's testimony and that of trial counsel at the hearing, it is inferable that trial counsel did advise defendant that he could and might be found guilty of second-degree murder even though it was "accidental" in the sense that defendant did not enter the food market with a fixed design to kill his victim; further, defendant was told that in light of the fact that the pistol discharged five times, and in light of possible testimony from a witness that defendant stated after the shooting "I guess I showed him," it was highly unlikely that a jury would find the killing "accidental." Any subjective belief that the killing was entirely "accidental" was wholly unreasonable and such subjective belief does not warrant relief from a guilty plea. *McMahon v. State,* 569 S.W.2d at 758[5]. We find, as did the trial court, that the defendant was not misled by his trial counsel concerning the "intent" necessary to establish second-degree murder.

Neither do we find that defendant was misled concerning the possibility of parole. Trial counsel explained at the hearing that he told defendant there was a possibility defendant might be considered for parole after two years if he pled guilty to second-degree murder. Such appears to be the gist of former § 549.261.2, in effect when the defendant was sentenced.

It is our view that when a criminal defendant seeks to withdraw his plea of guilty and vacate the sentence imposed thereon, he has the burden to show by a preponderance of the evidence that acceptance of his plea has caused a manifest injustice. *Winford v. State,* 485 S.W.2d 43, 49[2–4] (Mo. banc 1972); *Moore v. State,* 624 S.W.2d 520, 522 (Mo.App.1981); *Martin v. State,* 558 S.W.2d 701, 703 (Mo.App. 1977). This was held to be true in *Winford* even though the record on the guilty plea was not regular on its face. Here the trial court concluded the plea was knowingly and voluntarily entered. We have set out a considerable part of the record for the purpose of showing that the proceeding upon the tender of the guilty plea was fair and regular on its face. The principles applied in *Winford* and the precedents following it are controlling. The judgment is affirmed.

PREWITT, C.J., CROW, P.J., and TITUS and MAUS, JJ., concur.