Lemon SAMUELS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15807.

Missouri Court of Appeals,
Southern District,
Division Two.

May 15, 1989.

Robert D. Rachlin, Downs, Rachlin & Martin, Burlington, Vt., Richard M. Goldstein, Cape Girardeau, for movant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

Movant Lemon Samuels entered a plea of guilty to a charge of murder in the second degree. His plea was accepted and he was sentenced to imprisonment for 25 years. He seeks to set aside that plea by a motion under Rule 27.26.[1] After an evidentiary

1. Movant's sentence was pronounced before and his motion under Rule 27.26 was pending on

hearing, the motion court denied relief. Movant states one point on appeal.

The record presents little documentation of the proceedings in the underlying criminal case. The following is the general background of that case gleaned by implication from the testimony and findings of the motion court. The movant and Leon Garner were charged with the first degree murder of Steve Swofford on February 5, 1986. See *State v. Garner*, 760 S.W.2d 893 (Mo.App.1988). Movant and Garner were accorded a joint preliminary hearing on April 24, 1986. They were bound over for trial. At an undisclosed time, movant was granted a change of venue to Pemiscot County. His case was set for trial on March 5, 1987. At the request of movant, it was continued to March 30, 1987. Then, at the request of movant, the case was removed from the trial docket. Thereafter, the case was set for trial on October 26, 1987. On October 22, 1987, after consulting with his attorney, public defender Peter Sterling, the movant determined to accept a plea bargain. On October 23, 1987, the movant, his attorney Peter Sterling, and the prosecuting attorney appeared before the circuit court. Pursuant to the plea bargain, the movant entered a plea of guilty to an amended charge of murder in the second degree. He was sentenced to imprisonment for 25 years.

On November 19, 1987, the movant filed the pending motion under Rule 27.26. According to the motion, attorney Maurice Geiger of the Rural Justice Center of North Conway, New Hampshire, assisted him "in preparing and submitting this pro se motion." The motion further states, "Attorney Geiger has never 'represented' me but has been assisting me throughout my case because I have asked him to, he has cooperated with my court appointed attorney, and has assisted me in preparing this motion."

The motion purports to state eight grounds for relief. Those allegations include the following:

January 1, 1988. Post-conviction relief is governed by the provisions of former Rule 27.26.

(b) I only pled guilty because my lawyer, Peter Sterling, told me that if I went to trial that I would probably get an all white jury and that because I am black and accused of killing a white man that the jury would probably find me guilty and give me the death sentence, and that even though I had a very good case that he thought that my best chance to avoid the death penalty was to accept the offer to plead guilty to second degree murder and that I did not have any chance to get the advise [sic] of others and based on what my lawyer told me and what I know about the way things work in this part of Missouri, I was convinced that my only real choices were to plead guilty for something I did not do or end up dying in the gas chamber for something I did not do.

(c) That there is no factual basis for my guilty plea, and everything said in court on October 23rd about how I killed Steve Swafford [sic] was made up because my lawyer told me that we needed to tell the court a story of how the killing happened that fit with what the prosecutor was going to say, and the prosecutor's story was going to be that I hit Swafford [sic] with a brick and stabbed him with his own knife, and that it had to do with drugs. My lawyer helped me get a story together but it was all untrue because I had nothing to do with killing Swafford [sic] and I have no idea how Swafford [sic] was killed.

The balance of the allegations basically are repetitive, emphasizing the movant's indigency, lack of education and lack of time to talk to friends before accepting the plea bargain. At the evidentiary hearing on that motion, the movant testified and presented the testimony of his attorney, Peter Sterling. The motion court made extensive and comprehensive findings of fact in respect to each allegation of the motion and denied relief. "Appellate review shall be limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." Rule 27.26(j). Also see Rule 24.-035(j) and Rule 29.15(j).

The movant's point on appeal is as follows: "The trial court abused its discretion in overruling appellant's motion to vacate his conviction and sentence—withdrawal of appellant's plea of guilty is necessary to correct manifest injustice." The rules for appellate procedure include the following: "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authority thereunder." Rule 84.04(d). "Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Id. Also see Rule 30.-06(d). The point, as stated, preserves nothing for review. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). However, in argument, the movant states two headings or captions which will be considered.

The first heading asserts the plea was not voluntary because "[t]he Trial Court did not Adequately Inquire into Appellant's Plea of Guilty." Only by considering arguments under that heading can it be determined the movant contends the trial court did not follow Rule 24.02(b) in addressing the movant personally in open court. The trial court's personal dialogue with the movant extends for more than nine pages of the transcript of the guilty plea proceedings. It thoroughly covers and emphasizes each inquiry required by Rule 24.02. The transcript of the plea proceeding conclusively establishes that the movant's assertion in his first heading has no merit.

By his second heading, the movant asserts his "Plea of Guilty was Made Involuntary by Reliance on his Attorney's Advice." In argument under that heading movant states the following: "Specifically, Appellant asserts his counsel (a) instructed Appellant how to respond to the trial court's questions to assure acceptance of the plea at the plea hearing; and (b) informed Appellant he would be found guilty and given the death penalty, despite the merits of his case."

Movant's assertion (a) has the following background. In the record before the motion court one Bobby (Pork Chop) Hatton at the preliminary hearing testified he saw the homicide. Basically, he stated that he, Garner, the movant and others were congregated outside the Iceberg Club in Caruthersville in the early morning hours of February 5, 1986. The victim was walking by the group. The movant and Garner grabbed him and took him around the corner. Movant hit the victim in the head with some object and slammed him against the wall. The victim fell to the ground. Movant and Garner kicked him, stabbed him and hit him in the head with a hammer. The testimony of Hatton substantially recounted the same events as a video taped confession by Garner.

Tillson was an inmate in jail with the movant. He was prepared to testify to admissions made by the movant. What his exact testimony would be is not clear. Attorney Sterling testified he told movant that the Tillson version was that movant was alone when he encountered victim and stabbed and hit him. Sterling also said he told the movant that he would have to accept one version or the other in pleading guilty. The movant said he would adopt the Tillson version.

The substance of the anticipated Tillson testimony is placed in doubt by the prosecutor's recitation at the guilty plea hearing. In that recitation the prosecutor first gave a brief summary of Hatton's anticipated testimony. He then said the state would present the testimony of Tillson. He summarized the anticipated testimony of Tillson as follows:

> [Tillson] would testify that he asked this defendant did he, in fact, kill this young man, or words to that effect and which the defendant said he did. He would further state to the effect that this victim allegedly had some drugs that the defendant wanted, and they had some kind of confrontation about that, and this was at The Iceberg nightclub, and that the victim left and came back, and also the person who was incarcerated in jail with him would say that during an argument over some cards while they were

> playing there in the cell that this defendant became angry at another cellmate and said words to the effect of 'Don't mess with me. I have done killed one,' or words to that effect, and basically that would be what our evidence would be, Your Honor.

This recitation does not establish any inconsistency between the testimony of Hatton and Tillson. The only factual account of the homicide was to be established by the testimony of Hatton. Following the statement by the prosecutor, the court asked Mr. Sterling if he wanted to ask the movant questions concerning the prosecutor's rendition of the facts. Sterling then asked the movant, "Is that also your understanding of what the evidence would be in this case?" The movant answered, "Yes." The court then asked the movant the following questions: "There is no major deviations from what the prosecutor says? That's basically true? Is that your position?" The movant answered, "Yes."

The motion court specifically found that Sterling did not tell movant what to say. This determination is supported by the record. It is significant that in the plea proceeding no one referred to Sterling's version of Tillson's anticipated testimony. The movant did not adopt that version of the homicide. The record conclusively establishes the movant clearly admitted that he and Garner killed the victim as outlined by the prosecutor. The movant's first assertion is without foundation.

The movant's assertion that his trial counsel told him he would be found guilty and given the death penalty was also rejected by the motion court. Sterling's testimony at the motion hearing included the following questions and answers:

Q. Did you tell Lemon C. Samuels if he went to trial he would be found guilty and given the death penalty?

A. I did not.

Q. Did you tell him if he went to trial he would be found guilty and get life in prison?

A. No.

Q. Did you tell him that you knew what would happen if he went to trial?

A. Never.

Q. Did you offer an opinion to him as to what he should do in regard to pleading guilty or not pleading guilty?

A. No.

Q. Did you offer an opinion to him as to what would happen if he went to trial?

A. I told him that I thought he had a better than even or better than 50–50 chance of winning the case or beating the case.

The motion court's rejection of the movant's second assertion is supported by the record. This court also rejects that assertion.

■ It must be recognized that the movant's stated point, as amplified by his headings, does not encompass his basic contention. That contention is that even though the movant's plea of guilty was voluntary in the constitutional sense, the motion court erred in not permitting the movant to change his mind. To support this contention, he emphasizes his lack of education, his fear of the death penalty, over persuasion by his lawyer, the speed with which he recanted and his insistence upon his innocence. He argues the state's case was weak. He insists that unless he is permitted to withdraw his guilty plea, there will be a "miscarriage of justice". The movant's basic contention is unsound factually and legally.

The movant does not acknowledge the Rule governing the withdrawal of pleas of guilty.

(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Rule 29.07(d).

■ Doubt has been expressed concerning the availability of the collateral remedy provided by Rule 27.26 to seek to withdraw a guilty plea other than on the basis of constitutional invalidity. *State v. O'Neal,* 626 S.W.2d 693 (Mo.App.1981); *King v. State,* 615 S.W.2d 69 (Mo.App.1980). In any event, the scope of relief available in such a collateral attack is not broader than that available under Rule 29.07(d). *Tygart v. State,* 752 S.W.2d 362 (Mo.App.1988).

Even had movant filed a motion to withdraw before he was sentenced, "[t]he rule permitting presentence withdrawal of a guilty plea does not entitle an accused to withdrawal of the plea as a matter of right but only in extraordinary circumstances." *State v. McCollum,* 610 S.W.2d 81, 83 (Mo. App.1980). "Disposition of a motion to withdraw a previous guilty plea, made as here before sentence, rests in the trial court's discretion." *State v. Nebbitt,* 712 S.W.2d 430, 430 (Mo.App.1986). The standard to be observed for guidance in the exercise of that discretion has been often stated in the following terms. "When a defendant has been misled or induced to plead guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea." *State v. Lawrence,* 614 S.W.2d 1, 2 (Mo.App.1980). Also see *State v. Choate,* 639 S.W.2d 906 (Mo.App.1982).

Upon this appeal from the denial of a presentence motion to withdraw a guilty plea, the appellate court's review is limited to a determination of whether the trial court's ruling is an abuse of discretion. *State v. England,* 599 S.W.2d 942, 947[4–6] (Mo.App.1980); *State v. Nielsen,* 547 S.W.2d 153, 158[1–4] (Mo.App.1977).

*State v. McCollum,* supra, at 83.

Even had the movant filed a presentence motion, the trial court would not have been required to accept the factors emphasized by the movant or to be governed solely thereby. It could have considered the movant's ability to read and write established by his statement at the plea hearing that he had an 11th grade education and could read and write passably. Even at the motion hearing, he acknowledged that he understood everything in his Petition to Enter a Plea of Guilty which was read to him by Mr. Sterling. That petition, which the movant signed, is a sufficient basis to deny

movant's motion under Rule 27.26. The petition conclusively refutes each allegation of that motion.

■■■ The movant knew the anticipated evidence against him. He knew Garner had been found guilty of first degree murder. Movant's motivation to avoid the possibility of the death penalty is not the type of fear that forms the basis for the withdrawal of a guilty plea. "Fear that the death penalty might be imposed does not render a guilty plea vulnerable to a subsequent attack on the ground that the plea was coerced." *Hurd v. State*, 735 S.W.2d 438, 440 (Mo.App.1987). Also see *White v. State*, 694 S.W.2d 825 (Mo.App.1985). The fact a defendant does not recall the facts does not vitiate a guilty plea. *Smallwood v. State*, 698 S.W.2d 46 (Mo.App.1985). Nor does the fact movant claims to have lied concerning the facts. *Brown v. State*, 719 S.W.2d 52 (Mo.App.1986). " '[I]t is not necessary that the movant admit to, or even believe, the veracity of the elements of the charges against him in order for his guilty plea to be valid.' *Bird v. State*, 657 S.W.2d 315, 316 (Mo.App.1983)." Id. at 54.

The motion court could also have evaluated the factors movant emphasizes in the light of the inconsistency of his statements. In his motion movant alleges that Sterling told him the prosecutor's story was going to be that it had to do with drugs. Yet, movant's testimony at the motion hearing included the following questions and answers:

Q. What was your recollection when you heard it was drug related?

A. I looked at Mr. Sterling and look [sic] at Mr. Hazel, and he just had his head down.

Q. Was that a surprise to you when you learned it was supposed to be about drugs?

A. Yes, it was, because Mr. Sterling had told me in the room—he didn't mention nothing about no drugs.

Moreover, movant first testified that Sterling told him the Tillson version on Thursday and they went over it 15 or 20 minutes. Later he said he didn't know Tillson was prepared to testify and didn't know his statement until the day he "copped the plea." For a further example, when he was asked when he decided he wanted to withdraw his plea of guilty, movant answered, "Maybe the next day." He testified the first person he talked with after making that decision was Mr. Geiger and that was on Saturday, the day following his guilty plea. Yet, the movant's motion counsel stated to the court the following: "Mr. Geiger came down the following Monday, the plea having been entered on Friday, and it was agreed that Mr. Samuels was to file a 27.26."

Still further, movant testified that Sterling pressured him into a decision to plead guilty. Sterling testified:

Q. I know he made the plea, but did he tell you on Thursday that he would accept that plea bargain?

A. Yes, because I recall that—I said 'Well, that's a pretty important decision. You better think about it for a while.' And he stopped me and said, 'No, I have made up my mind that's what I'm going to do.'

It is also significant the movant's case had been set for trial at least twice and continued. Sterling testified they had prepared for trial twice. It was continued once when 130 jurors were present for the trial. Movant had undoubtedly been thoroughly advised by attorney Geiger and his experienced public defender Sterling. Moreover, the trial court could consider the fact the plea was entered as the result of a plea bargain. *Row v. State*, 680 S.W.2d 418 (Mo.App.1984). Even had the movant sought to withdraw his plea before sentencing, the trial court would not have abused its discretion in rejecting such a motion.

Movant's basic contention is conclusively legally unsound because he did not seek to withdraw his plea of guilty until after he was sentenced. The proper interpretation of Rule 29.07(d) and principle for its application has been succinctly stated.

'An application to withdraw a plea of guilty made after sentence is an attack on the validity of that sentence within the meaning of Rule 27.26, as amended and effective September 1, 1967. If it be found on the hearing on the motion to vacate the sentence, notwithstanding the

insufficiency of the record at the time the plea was accepted, that *the plea of guilty was in fact voluntary and was made with an understanding of the nature of the charge, then no manifest injustice could have resulted.'* State v. Sayre, Mo.Sup., 420 S.W.2d 303, 304, 305. See also the more recent cases of *Schuler v. State,* Mo.Sup., 476 S.W.2d 596; *Peterson v. State,* Mo.Sup., 476 S.W.2d 608, and *Tyler v. State,* Mo.Sup., 476 S.W.2d 611.

*Winford v. State,* 485 S.W.2d 43, 49 (Mo. banc 1972) (emphasis added). This interpretation has been consistently followed.

Nevertheless, when a criminal defendant seeks to withdraw his plea of guilty and vacate the sentence imposed thereon, he has the burden to show by a preponderance of the evidence that acceptance of his plea has caused a manifest injustice. *Winford v. State,* 485 S.W.2d 43, 49[2–4] (Mo.banc 1972); *Huffman v. State,* 703 S.W.2d 566, 567–68 (Mo.App.1986); *Deck v. State,* 682 S.W.2d 874, 877[3] (Mo.App. 1984). Further, if the whole record, including the record made at the time of the plea and that made at the postconviction hearing warrants a finding that the defendant was in fact aware of the consequences of his plea, no manifest injustice can have resulted from the acceptance of the plea. *Canada v. State,* 505 S.W.2d 42, 43 (Mo.1974); *Oldham v. State,* 740 S.W.2d 213, 214–15 (Mo.App. 1987).

*Knight v. State,* 760 S.W.2d 559, 564 (Mo. App.1988). Also see *Orr v. State,* 607 S.W. 2d 187 (Mo.App.1980). The motion court's determination that the movant had not established a grounds for the relief sought is supported by the record and is not clearly erroneous. *Jackson v. State,* 654 S.W.2d 105 (Mo.App.1983). The judgment of the motion court is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

HOGAN, J., not participating.