David TYGART, Movant–Respondent,

v.

STATE of Missouri, Appellant.

David TYGART,
Movant–Cross–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15241, 15282.

Missouri Court of Appeals,
Southern District,
Division Two.

April 25, 1988.

Motion for Rehearing or to Transfer Denied and Overruled May 17, 1988.

Jon Van Arkel, Asst. Public Defender, Springfield, for movant-respondent and movant-cross-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for appellant and respondent.

MAUS, Judge.

By his motion under Rule 27.26, the movant, David Tygart, seeks to set aside his sentence and withdraw his plea of guilty to a charge of first degree murder. § 565.020. His motion alleged four grounds why that relief should be granted. Following an evidentiary hearing, the motion court found against movant on two allegations. But, under the third and fourth allegations, it set aside the sentence and directed the trial court to hold a hearing on the movant's request to withdraw his plea of guilty with leave to the movant to present evidence. The state appeals from that judgment. The movant appeals from the adverse determination upon two of the four allegations.

Procedurally and factually this case is unusual. In particular it presents questions of procedure that have not been answered by the appellate courts. Counsel presented the case in the motion court in such a manner as to totally obfuscate those issues. The suggestions filed by movant's counsel included a misconception of the law as well as a misleading statement of the facts. The motion court was not aided by the failure of the state to file counter-suggestions. This made it virtually impossible for the motion court to define and resolve those issues.

The following is the general background of the case. The movant was charged with having committed first degree (capital) murder in violation of § 565.020.1 by shooting Don Tracy on September 7, 1985. Movant was represented by experienced, able and aggressive defense counsel. On March 26, 1986, movant signed a petition to withdraw his prior plea of not guilty and enter a plea of guilty pursuant to a plea bargain. The plea bargain was that the state would not seek the death penalty.

On March 31, 1986, the petition was presented to the Circuit Court of Jasper County. The movant appeared in person and by his retained counsel. The state appeared by the prosecuting attorney. The trial court conducted a lengthy hearing upon that petition. At the conclusion of the hearing the trial court made detailed findings and accepted the plea of guilty. Even though the only alternative punishment was imprisonment for life without eligibility for probation or parole or release, except by act of the governor, § 565.020.2, the trial court acceded to the movant's request for a presentence investigation. It set sentencing for May 27, 1986.

For a reason and in a manner not disclosed by the record, the trial court advanced sentencing to April 14, 1986. A presentence report had been filed. The defendant and his retained counsel appeared without objection. The state appeared by the prosecuting attorney. Movant and his counsel acknowledged the receipt of a copy of the report a few days prior to the hearing. The movant said the statement in the report that "David Tygart does maintain that he only shot Tracy twice" was a misquotation. He said he stated he "was responsible for the shooting" but that he only shot him once.

When asked if there was anything else, movant said he did not agree there was deliberation and premeditation. In a colloquy with the court, the movant said he was not asking for a jury trial. He added, "I'm asking that if the Court could hear the matter of deliberation and premeditation alone, on those points, the Court could hear, not a jury trial, but a Court trial, if it's possible, as I don't know, on those points alone." The court replied that such a hearing would be impossible, but that the court would treat his request as a motion to withdraw the plea of guilty. There was an extended hearing in which the movant, his counsel and the prosecuting attorney participated. The hearing was recessed for counsel to read the transcript of the acceptance of the plea. The court also read portions of that transcript. Following a recess of approximately two hours, the hearing

was resumed. Relevant portions of the hearing will be hereafter noted. At the conclusion of the hearing, the court denied the motion to withdraw and sentenced movant in accordance with the plea bargain. No appeal was taken.

At the outset this court must take cognizance of the state's contention that a motion under Rule 27.26 may not be used to review the denial of a motion to withdraw a plea of guilty. That contention is based upon the proposition that such a motion may not be used as a substitute for a direct appeal. It cites cases such as *State v. O'Neal*, 626 S.W.2d 693 (Mo.App.1981); *King v. State*, 615 S.W.2d 69 (Mo.App. 1980).

■ In general, the contention of the state has merit. A defendant may appeal from the sentence and judgment entered upon a guilty plea. *State v. LaDriere*, 299 S.W.2d 512 (Mo. banc 1957). However, the scope of review on such an appeal is "restricted to the question of the jurisdiction of the subject matter and the sufficiency of the criminal charge." *State v. LePage*, 536 S.W.2d 834, 835 (Mo.App.1976). Also see *State v. O'Neal*, supra. Other errors cognizable under Rule 27.26 are not subject to review on such an appeal. They may be reviewed in a collateral attack under that rule.

■ But, when a defendant has timely filed a motion to withdraw a guilty plea, the action of the trial court in denying that motion is subject to review upon appeal. *King v. State*, supra. The scope of review on such an appeal is, as hereafter stated, broader and includes the issue of whether or not the trial court abused its discretion in denying such withdrawal. If such an appeal is taken and determined adversely to a defendant, it is clear a motion under Rule 27.26 could not be used to gain further review of issues cognizable on appeal. *Hulsey v. State*, 631 S.W.2d 368 (Mo.App. 1982). Basically, the same rule is applicable when no appeal is taken and the decision of the trial court has become final.

However, it has been held that an error that could have been raised on appeal, in rare and exceptional circumstances, when the same is required by fundamental fairness, may be presented by a motion under Rule 27.26. *Brown v. State*, 729 S.W.2d 54 (Mo.App.1987); *Covington v. State*, 600 S.W.2d 186 (Mo.App.1980); *McCrary v. State*, 529 S.W.2d 467 (Mo.App.1975). Because of the circumstances of this case, including the allegations of the motion and findings of the motion court, this court will review the appeals upon their merits.

■ The appeal by the state will be considered first. An underlying argument of the state is that the relief of setting aside the plea and sentence to permit movant to introduce additional evidence is unauthorized. It contends this is true even if the propriety of the trial court's action in denying the withdrawal is to be reviewed in this proceeding under Rule 27.26. The state is correct. If the record in the motion court, which includes the record in the trial court, does not establish the trial court erred in denying the motion to withdraw, there is no basis to set aside the sentence and judgment. They cannot be set aside to permit the movant to have a second opportunity to establish error. Further, even if, as he alleged, movant had been improperly denied the right of appeal, the remedy is not to vacate the sentence for a further hearing. It is to vacate the sentence and resentence the defendant permitting an appeal from the date of the new sentence. *Green v. State*, 451 S.W.2d 82 (Mo.1970). The appeals will be determined upon the record before this court.

The motion court found the movant presented four grounds for relief. That determination is supported by the record. Those grounds are as follows:

1. That no factual basis existed for the court's determination that 'deliberation' was present.

2. That Movant's plea of guilty was not made knowingly and voluntarily for the reason that Movant was suffering from a mental disease or defect and was under medication at the time of his plea, which prevented Movant from understanding the proceedings and the consequences of pleading guilty.

3. That Movant's plea of guilty was not made knowingly for the reason that Movant did not understand the charge and was unable to determine for himself that he deliberated and he would not have plead [sic] guilty had he understood the meaning of deliberation on March 31, 1986.

4. That Movant was denied his rights to due process and to a meaningful appeal by the acts and actions of the trial court.

As stated, the motion court found against the movant on grounds (1) and (2). It made no express finding upon ground (3). It found for the movant upon ground (4). While the issue was not pleaded, the conclusions of law also included a finding the movant was misled by the trial court into thinking that he could withdraw his guilty plea anytime before sentence was imposed.

The state contends the motion court erred because the evidence established the guilty plea was knowingly and voluntarily entered and the trial court did not abuse its discretion in denying the motion to withdraw. The movant contends that his plea was not voluntary because he did not understand the charge and could not determine that he deliberated and would not have pled guilty had he understood the meaning of deliberation.

Rule 29.07(d) provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

The standards for review on direct appeal of the refusal of a trial court to permit the withdrawal of a guilty plea are well established. The relevant standards have been succinctly expressed.

Upon this appeal from the denial of a presentence motion to withdraw a guilty plea, *the appellate court's review is limited to a determination of whether the trial court's ruling is an abuse of discretion. State v. England,* 599 S.W.2d

942, 947[4–6] (Mo.App.1980); *State v. Nielsen,* 547 S.W.2d 153, 158[1–4] (Mo. App.1977). The rule permitting presentence withdrawal of a guilty plea does not entitle an accused to withdrawal of the plea as a matter of right but only in extraordinary circumstances. *State v. Nielsen,* supra, 158[1–4]. Rule 29.07(d). 'If an accused has been misled or induced to plead guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or illfounded, he should be permitted to withdraw his plea.' *State v. Nielsen,* supra, 159[6].

*State v. McCollum,* 610 S.W.2d 81, 83 (Mo. App.1980) (emphasis added). "The burden of proof rests on the defendant to show by a preponderance of the evidence that the trial court was incorrect in denying his motion." *State v. Galvan,* 685 S.W.2d 612, 613 (Mo.App.1985). Also see *State v. Nebbitt,* 712 S.W.2d 430 (Mo.App.1986); *State v. Choate,* 637 S.W.2d 399 (Mo.App.1982).

The same standards must be applicable to such review by a motion court in a proceeding under Rule 27.26.

■ The decisive issue tendered by movant is whether or not the trial court abused its discretion in determining he understood the meaning of deliberation when he entered his plea of guilty. That being so, normally the evidence to be considered on that issue should be limited to that before the trial court. However, without objection, the movant presented additional evidence in support of his motion under Rule 27.26. Considering the absence of objection and the exceptional circumstances of the proceeding, the judgment of the motion court will be reviewed upon the basis of all the evidence. That includes the evidence at the plea hearing, at the hearing upon the motion to withdraw and at the 27.26 motion hearing.

The transcript demonstrates the guilty plea was accepted only after a hearing, the scope of which more than exceeded the requirements of Rule 24.02. The trial court was thorough in its effort to establish movant understood his rights, had been fully advised by counsel and understood

the charge. It was meticulous in explaining the difference between first and second degree murder and the meaning of deliberation. The following excerpts are illustrative:

(continuing by the Court) Now the charge which the State has brought against you in the information and to which this plea is being entered is a charge of murder in the first degree. That is set out in our statutes, Section 565.020, as follows: 'A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.' The nature of the charge is that you knowingly cause the death of another person and you do it after deliberation upon the matter. Now Section 565.002 defines deliberation as follows: 'Deliberation means a cool reflection for any length of time, no matter how brief.' In other words, by deliberation, we mean that you think about it, you think it over. It can be done very quickly, but still it has to be a cool reflection or thinking about what you're doing; that is, that you're killing some person. So the nature of it is, or the elements, that you knowingly cause the death of another person, and you do it after deliberation upon the matter. Do you understand now the nature of the charge of murder in the first degree?

A. Yes, sir.

Q. Do you have any questions you want to ask about it?

A. No sir.

....

Q. All right. Under the evidence.... if the Court finds that under the evidence the jury could find that you're not guilty of murder in the first degree but are guilty of murder in the second degree, then I would give them that instruction. Now the difference, the main difference between murder in the first degree and murder in the second degree is this matter of deliberation, which I explained to you earlier. That's where you cooly reflect upon it. Deliberation, of course, is a state of mind. And the evidence that comes in at the trial, in most cases the jury could hear all the evidence and say: Well, he did deliberate on it, or he didn't deliberate on it. And since that is a possibility, I would give the jury a chance to find that way. To explain further, about the only kind of a case where you would not instruct on murder in the second degree would be where somebody had killed another person by poisoning them over.... give them little doses of poison for a period of time, it would be obvious they had thought about it; see.

A. Yes.

....

Q. In paragraph 5 of your petition to enter the plea of guilty, you state what you did as follows: 'I shot Don Tracy.' Did that happen or [sic] about September 7, 1985?

A. Yes, sir, it did.

....

Q. (by the Court) All right. And did you knowingly cause the death of Don Tracy by shooting him?

A. He did die as a result of the shot, yes.

Q. What the jury would be required to find if this went to the jury on that issue is that the defendant knew or was aware that his conduct was causing or was practically certain to cause the death of the victim. Now did you know that what you were doing was causing his death or was practically certain to cause him to die?

A. Yes, sir.

Q. And did you do this after deliberation; that is, after reflecting, after cool reflection upon the matter for any period of time, even though brief?

A. Yes, I did. Very briefly.

It was with particularity the trial court established a factual basis for the plea.

THE COURT: Do you have any comments on the factual basis, Mr. Crandall?

MR. CRANDALL: No, sir, Your Honor. I've spent practically a month and a half on this, completely, almost, and Doug and Carl have spent a great deal of time. And we feel the factual situation

is, I'm sure, as David has stated it, as I know it to be. There is a factual basis.

THE COURT: Maybe you'd better, Mr. Fleischaker, just outline for the Court the circumstances.

The prosecuting attorney then outlined the facts of which the following is a summary. The movant and one Roberts believed Don Tracy had informed on them. Late on the evening of September 6, 1985, movant and Roberts went to the home of one Hensley to await and confront Tracy. Movant and Roberts were armed. After he arrived, Tracy was subjected to accusations for two or three hours. The recitation continued with the following:

That sometime in the early morning hours of September 7th, Mr. Tracy was handcuffed and removed from the Hensley residence; I believe he was at gunpoint. The evidence, for sure, would show that Mr. Roberts and Mr. Tygart were armed at that point. That they took Mr. Tracy to Mr. Tygart's car and that Mr. Hensley drove the car. That Troy Tygart, the defendant's son, was in the front passenger's seat. That Mr. Tracy was kept in the rear passenger's seat between Mr. Tygart and Mr. Roberts. That they drove to a location east of the City of Webb City to some chat piles where the parties exited the car. That there were discussions about giving Mr. Tracy a whipping. That at that point Mr. Tracy was unhandcuffed, and that, according to the State's evidence, Mr. Roberts, who was then holding the gun, fired it in the direction of Mr. Tracy and Mr. Tracy fell. That the parties, Mr. Tygart and Mr. Hensley, went up to Mr. Tracy. That he was wounded. That he was shot in the face; that his face was covered with blood. That he was then drug off the road area back into some bushes. At that point in time there were some discussions between Roberts and Mr. Tygart and Mr. Hensley to the effect that Mr. Tracy was still alive, that there was concern about whether or not Mr. Tracy would be available to testify against them for assaulting him. That Mr. Tracy was then pulled back out of the bushes and placed in the trunk of Mr.

Tygart's car. That the parties then got back into the car, again with Mike Hensley driving, David Tygart and Gary Roberts in the rear and Troy Tygart in the front. And that the car was driven up to the north portion of the county. There were discussions about finding a bridge or dumping him in Spring River or North Fork River. Mr. Hensley would testify that he drove the car almost up to the City of Waco and then proceeded back down on back roads south of Waco to a point where there is a bridge over Spring River. That at that time Mr. Tracy's body was removed from the vehicle and laid on the surface of the bridge. That again his pulse was felt by Mr. Tygart who indicated that he was still alive. That at that point in time—again, this is from the testimony of Mike Hensley— that Mr. Tygart stepped back a few feet from where Mr. Tracy's body was lying. That he then took the handgun he was holding, pointed it at Mr. Tracy, fired a shot. That Mr. Tracy's body appeared to have been shot and flew off the bridge from the impact of the shot.

. . . .

MR. FLEISCHAKER: The evidence would show that the actual cause of death was drowning. Mr. Tracy, however, would have died in a very short period of time from the . . . not from the facial wound, but from the shot in the back of the head, which did go through his . . . did penetrate the brain. But that the actual cause of death was from drowning.

The group then returned to Webb City. Later Hensley called the Jasper County Sheriff's Department and made a statement.

At the conclusion of the factual statement the trial court inquired if the movant had anything to add. Defense counsel replied, "I think he has substantially told the Court that which the evidence would prove and as I know it to be. That would be through the State's witnesses, and I think the State's witnesses would so testify." The trial court then accepted the plea of guilty pursuant to the plea bargaining.

As stated, at the sentencing hearing, the trial court first determined that defense counsel had delivered a copy of the presentence report to the movant with instructions to go over it and make any changes or additions he wished. The trial court then invited the movant to make any corrections or additions. The movant first said the report was in error in that it stated that movant shot Tracy twice. Movant said, "I stated to him that I was responsible for the shooting." He added that he only shot Tracy once.

The movant then stated. "I don't agree that there was deliberation and premeditation. There was not premeditation on my part, and that I don't believe, in all honesty, that I deliberated at any time." In a dialogue with the trial court and his counsel, the movant repeated that statement. The trial court then inquired if movant was asking to withdraw his guilty plea. Movant replied, "What I would ask the Court is, if it's possible, and I don't even know if it's possible, if on this point alone, I'm not asking for a jury trial, just the fact that on the matter of deliberation and premeditation, I don't feel honestly in my own mind —." The following colloquy ensued:

THE COURT: Well, on March 31, 1986, when we had the guilty plea hearing, on that day you understood the difference between first degree murder and second degree murder, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You understood that there was a question of whether or not you deliberated.

THE DEFENDANT: Yes, but—

THE COURT: Now do you recall me telling you that if the case went to trial, that in all probability I would instruct the jury that they could find you guilty of first degree murder, or, if they didn't find that, then they could consider second degree murder.

THE DEFENDANT: Right.

THE COURT: I would give them that option.

THE DEFENDANT: Yes.

THE COURT: And I explained to you it wasn't just an option between first degree murder and not guilty, that they would consider second degree, and, possibly, even an instruction on manslaughter. Do you recall me telling you that?

THE DEFENDANT: I remember, and you stated to me that the length of time on deliberation didn't matter whether it was a short period of time or whether it was a long period of time, that it didn't matter.

Later the movant restated his request.

THE DEFENDANT: This is what I was wanting to ask the Court is on this point alone—I'm not asking for a jury trial to say that I'm innocent, I'm not saying that. I'm not stating that point. I'm asking that if the Court could hear the matter of deliberation and premeditation alone, on those points, the Court could hear, not a jury trial, but a Court trial, if it's possible, as I don't know, on those points alone.

The trial court then concluded it would treat the movant's request as a motion to withdraw his plea of guilty. That issue was addressed by the prosecuting attorney, movant's counsel and again by movant. The trial court adjourned to permit the court and the parties to read the transcript of the guilty plea.

After the recess, the trial court announced that in view of the transcript of the guilty plea hearing it would deny the motion to withdraw. The movant again restated his position. The court then stated:

Of course, I'm further influenced by the fact that what I have learned from these hearings on the facts of the case, that the victim was shot once, was only wounded, did not die, was placed ... was in the trunk of the car, or placed in the car anyway, and taken to another location, shot again, and finally thrown in the river and drowned. That all this certainly would constitute substantial proof of deliberation, that you were thinking about what you were doing and reflecting upon it.

The movant responded:

The incident.... I mean, the relating of the facts that you have there are true,

but the circumstances involved in those facts is what, in my mind, shows that on my part there was no deliberation involved. And explaining would bring the names of other individuals up and I don't want to do that.

The court then said, "I think the Court's ruling should stand" and sentenced the movant in accordance with the plea bargain.

At the hearing upon the motion under Rule 27.26, the movant testified and called as witnesses his trial counsel and Dr. David L. Jobe. At the behest of movant's counsel, Dr. Jobe had examined movant before the plea of guilty was entered.

The movant testified that at the time of the plea he did not understand the meaning of deliberation. He explained he first understood deliberation when he went into the law library in prison and "a friend of mine, Leroy Tyler, set down with the books, explained to me exactly what mandatory, what covered deliberation, deliberately, deliberately, uh, pre-meditation, the whole line like that." He understood an accidental shooting was not deliberate. The following ensued:

> Q. [movant's counsel] On March 31st, I'm not talking about now, I'm talking about March 31st, did you believe that any other kind of killing that wasn't an accident would have had some kind of deliberation?
> A. No. There is, all the, all the facts that's of, of, of murder, it's, it's not going to—

He then acknowledged questions and answers pertaining to the issue of deliberation given at the plea hearing. In speaking of the trial court movant said:

> A. Uh, he asked me questions, and I did state, I said, uh, he did die as a result of the shot. His answer was that, uh, what the Court would, would need to prove was that did Mr. Tracy die according to a shot that was fired into him deliberately and premeditatedly, no matter what length of time, however brief. Well, he didn't under—, he didn't explain to me what brief was, and I told him that, that, uh, he did die, uh, no matter how briefly.

Trial counsel testified that on numerous occasions he and his partners had explained the elements of the offense of first degree murder to the movant. The evidence concerning the movant's understanding of his right to withdraw his plea, his right to appeal and his mental condition will be noted later.

As stated, the motion court made no express finding upon movant's allegation he did not understand the meaning of deliberation. There is no support for this allegation in the record of the plea hearing nor the hearing at which the movant's motion to withdraw was denied. In the latter hearing the movant concluded he could not say he deliberated but did not suggest he had any problem with the meaning of the word deliberation. The only support for that allegation is found in isolated statements of the movant at the third hearing. Those statements were premised upon movant's education in the prison law library. Those statements are refuted by the whole of movant's testimony at that hearing. This is emphasized by his final conclusion that he entered his plea because the trial court did not explain to him the meaning of "briefly".

The records of the plea hearing and subsequent hearing have been liberally quoted. Those records conclusively establish the allegation has no merit. Further, it is well established "[w]hen an accused in a plea proceeding admits in open court facts which constitute the offense to which he pleads guilty, he is thereafter precluded from withdrawing his plea on the assertion that he did not understand the nature of the charge to which he pled guilty." *Ballard v. State*, 577 S.W.2d 932, 934 (Mo.App. 1979). Also see *Lawrence v. State*, 607 S.W.2d 198 (Mo.App.1980). The facts stated at the plea hearing clearly establish deliberation.

Even at the withdrawal hearing, when movant said he could not determine he deliberated, he again admitted the following summary of the facts: "the victim was shot once, was only wounded, did not die, was placed ... was in the trunk of the car, or placed in the car anyway, and taken to

another location, shot again, and finally thrown in the river and drowned." The admitted facts conclusively establish deliberation.

In summary, the movant did not present any substantive evidence to support ground (3) concerning the meaning of deliberation. "As movant did not supply any substantive evidence to support his motions the failure to make specific findings and conclusions was not erroneous." *Smith v. State*, 674 S.W.2d 638, 642 (Mo.App.1984). Moreover, in view of movant's admissions of the facts, a finding in movant's favor on that ground would have been contrary to law. For this reason, the cause need not be remanded for the motion court to make findings upon ground (3). *Johnson v. State*, 615 S.W.2d 502 (Mo.App.1981). There is no merit to ground (3).

■ As stated, the motion court found that because movant was misled by the trial court, he believed he could withdraw his plea of guilty anytime before sentencing. Initially, it is appropriate to observe that even assuming the movant had a misconception concerning his right to appeal, he has suffered no prejudice. He has been accorded appellate review. Moreover, such review has considered more than the records of the plea hearing and the hearing upon the motion to withdraw. That review has encompassed the movant's attempt to bolster his position by the 27.26 motion hearing. At the 27.26 motion hearing, the movant testified he believed he could do so because the trial court so stated in open court. It is significant that at the 27.26 motion hearing the following question was asked of movant's trial counsel and the following answer was given:

Q. Do you know if Mr. Tygart was under the impression that he could withdraw his guilty plea up to the date of sentencing?

A. I certainly wouldn't have any idea what his impression was. I didn't give it to him.

A review of the transcript of the plea hearing conclusively refutes movant's testimony the trial court told him he could withdraw his guilty plea before sentencing.

There is no evidence to support this finding and the same is reversed.

■ Further, the motion court found that because the trial court told the movant there could be no appeal after a plea of guilty, the movant was denied the right of appeal from the denial of the motion to withdraw the guilty plea and from the guilty plea. As noted, while the scope of review is limited, there is a right of appeal from a guilty plea. There is also a right of appeal from the denial of a motion to withdraw a guilty plea before sentencing, which appeal invokes a different scope of review.

To support this finding, the movant relies upon remarks of the trial court during the plea hearing similar to the following: "[T]here will be no right of appeal. Once you enter the guilty plea and the guilty plea is accepted and sentence imposed, you wouldn't appeal from this but you could test it under the 27.26 procedure."

This remark must be considered in context. Before these remarks, the movant inquired "if, while I am incarcerated, there is evidence that comes up that would be contrary to my guilty plea, is there … do I still have the right to an appeal?" After the above remark, the dialogue on this subject continued as follows: "Q. (by the Court) … I don't want you to think that this procedure under Supreme Court Rule 27.26 is just sort of an automatic way of getting something set aside. A. I understand." The trial court then cautioned the movant that to "come back and say, '[t]here's another witness we've found that could say something else,' that wouldn't get it set aside." The movant then said he did not ask the question concerning his constitutional rights, "but some other ground." The court again referred to a witness who might come along with proof the movant was innocent and surmised the movant could seek relief from the governor, but once the plea was accepted and sentence imposed, movant "won't just be able to appeal to a higher court." The movant replied, "I understand that. But the reason for that question was that if at a later date, my mental capacity at the time of the shooting was such that I couldn't

fully deliberate, which at this point I'm not certain on that."

After this comment the trial court conducted a lengthy inquiry into the movant's mental condition, including the movant's mental examination at Fulton State Hospital and by Dr. Jobe. It advised the movant he could present the issue of his mental condition at trial, but if he pled guilty "probably there would be no way you could bring that issue up then later." The trial court then asked, "Do you have any further questions then on this matter of your mental disease or defect or your mental capacity to form the mental state of deliberation?" The movant answered, "No, sir."

It was after this the trial court reviewed the elements of the offense and the movant stated he deliberated briefly. Also, thereafter, the prosecuting attorney stated the factual basis for the plea of guilty and the movant admitted those facts.

The movant's explanation of the reason for his question concerning an appeal indicates he was then contemplating how he could in the future raise an issue concerning his mental capacity. If he had any misconception concerning the right to appeal from the denial of his motion to withdraw his plea, that was dispelled by his trial counsel as demonstrated by the following testimony at the hearing on the 27.26 motion:

Q. Did you file any kind of a notice of appeal after Mr. Tygart was sentenced?
A. [by movant's trial counsel] I told David that he had ten days in which to file a notice of appeal, that I saw no basis or any grounds, but that he had that per—, amount of time, and I never heard any more from him.
. . . .
Q. Was that before sentencing on April 14th [1986]?
A. No, it was after sentencing.

It is significant the movant filed a motion under Rule 27.26 on June 20, 1986. Motion counsel was appointed on June 24, 1986. Movant could have, within 12 months after his sentence became final, sought to file a late notice of appeal. Rule 30.03. He did not do so. This court is firmly convinced a mistake has been made in the finding under consideration and the same is vacated.

■ It has also been suggested the trial court denied the motion to withdraw because it would disrupt its docket and therefore such denial was an abuse of discretion. At the sentencing hearing, after movant restated he could not say he deliberated, the trial court observed that to permit the movant to withdraw would throw the docket into confusion. This was no doubt prompted by the fact movant's motion to plead guilty was accepted upon or very near the day the case was set for trial.

However, the trial court had already announced it found the movant's plea was an informed, voluntary plea and it overruled the motion to withdraw. It was after the movant's continued remonstrance the court made the remark in question, which must be considered in context. The context of the trial court's remark is:

[I]t is my finding that you fully understood that and agreed that it was present and did make an intelligent decision to enter the plea of guilty, and I think it would be wrong for me now to permit that to be withdrawn and throw the Court's docket into confusion with this case first coming in and out and back in.

There is no basis to find the denial of the motion to withdraw was not based upon its merits and was an abuse of discretion.

■ As ground (2), movant alleged that by reason of mental illness and medication he did not understand the proceedings and the consequences of pleading guilty. The motion court found movant did not establish that allegation.

At the 27.26 motion hearing, movant testified he was a manic-depressive and his medication had been doubled a few days before his plea was entered. As a result, he said it was difficult for him to think and he was not capable of making a rational decision to change his plea to guilty. However, at the plea hearing the movant explained his mental condition and medication to the trial court. Nonetheless, the movant said "my mind is clear and I understand what the proceedings are." Movant's trial

counsel testified that at the time of the plea, movant had no problem concerning alertness or ability to understand. The doctor who examined movant at his counsel's request testified movant exhibited no side effects from medication. The record and evidence supported the finding of the trial court against movant and that finding is affirmed. *State v. Galvan,* supra.

The motion court also found against movant on his allegation there was no factual basis for the trial court to determine there was deliberation on the part of movant. The movant's contention that this finding is incorrect is obviously without merit. The finding is approved.

The movant "failed to meet his burden to show, as he must, extraordinary circumstances showing the trial court had abused its discretion in denying defendant's challenge to his plea of guilty." *State v. Nebbitt,* supra, at 431. The evidence does not establish the movant was denied the right of appeal. The judgment of the motion court is reversed and judgment is entered denying movant's motion under Rule 27.26.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.