STATE of Missouri, Respondent,

v.

Brent Shane SEIDEL, Appellant.

No. 15333.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 6, 1989.

Michael Baker, Springfield, for appellant.

William L. Webster, Atty. Gen. and Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Chief Judge.

Appellant Brent Shane Seidel was convicted in a jury trial of attempted first degree robbery, §§ 564.011[1] and 569.020, and armed criminal action, § 571.015. Appellant was sentenced to five years and three years, respectively, said sentences to be served consecutively. From this judgment, he appeals.

Seidel's sole point on appeal is that the trial court erred in overruling his motion to dismiss the information because the juvenile court's decision to dismiss the juvenile petition and allow prosecution under the general law was not supported by the evidence and was an abuse of discretion. We affirm.

The facts in this case are as follows. Seidel and an accomplice planned to rob the West Bypass Tobacco Store in Greene County. In preparation for the crime, they broke into Seidel's father's bedroom and took his .22 caliber revolver. Appellant and his accomplice walked from his house to the liquor store. They entered the store with Seidel holding the gun. Just as the robbery commenced, the clerk at the store fired a handgun. Seidel was shot in the hand. The accomplice was fatally wounded. Seidel escaped, but, upon arrival at home, he requested a friend to take him to the hospital. He wanted a doctor to treat his hand and also stated he intended to "turn [himself] in."

Seidel was fifteen days short of his seventeenth birthday when the incident occurred, so a juvenile petition was initially filed. Because the offense would be considered a felony if committed by an adult, the juvenile court ordered a hearing to determine whether the juvenile petition should be dismissed so that the "child may be transferred to the court of general jurisdiction and prosecuted under the general law." Rule 118.01, § 211.071.1. In the

juvenile hearing, witnesses for the juvenile office and appellant testified that Seidel was "unsophisticated and immature," was a "proper subject to be dealt with by the juvenile justice system," and that he "could benefit from the treatments and programs available to the Juvenile Court." On November 6, 1986, the juvenile court dismissed the juvenile petition. It is this decision that appellant challenges.

The decision to terminate jurisdiction by the juvenile court was discretionary, § 211.071, and "appellate review ... is limited to a determination of whether in the totality of the circumstances the court abused its discretion." *In Interest of A.D.R.,* 603 S.W.2d 575, 580–81 (Mo. banc 1980); *State v. Tate,* 637 S.W.2d 67, 70–71 (Mo.App.1982). The statute provides eight nonexclusive factors for the juvenile court to consider "in determining whether the child is a proper subject to be dealt with under the provisions of [the Juvenile Code] and whether there are reasonable prospects of rehabilitation within the juvenile justice system." § 211.071.6. "It [is] not necessary, of course, or desirable, for the court to give equal weight to each of the eight factors listed by the statute. It [is] not necessary for [the court] to make an express finding on each one." *State v. Garbe,* 740 S.W.2d 266, 268 (Mo.App.1987).

With this standard in mind, we examine the relevant factors in order to decide whether the juvenile court abused its discretion. The court first found appellant to be a "well-developed [sic] experienced and mature appearing person." This court defers to that factual finding because the juvenile judge had the opportunity to observe appellant while this court did not. The finding is relevant to the dismissal of the juvenile petition. *See State v. Tate, supra,* at 71.

A highly significant criterion, acknowledged in appellant's brief, is the nature of the offenses. The juvenile court found the offenses to be "against persons" and to

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1986, and rule references are to Missouri Rules of Court (20th ed. 1989).

involve "viciousness, violence and force" in that appellant allegedly displayed a deadly weapon and his accomplice was fatally shot. The court further found that the nature and seriousness of the juvenile's conduct was a threat to society and that the facilities available to the juvenile court did not offer a reasonable expectation of rehabilitation or protection of the community. Appellant challenges the evidentiary basis for the finding that the juvenile facilities available to the court would not protect society and aid in his rehabilitation.

The juvenile officer testified that in his opinion appellant would benefit from available juvenile facilities and programs. However the juvenile officer equivocated when asked directly whether the available programs and facilities would rehabilitate appellant. The officer would only generalize that he found "these youngsters to be somewhat responsive." Attempting to rob a liquor store while armed with a loaded handgun is a vicious and violent crime against persons and is the kind of crime that poses a serious threat to the community. No witness gave the juvenile judge any assurance that considering the personality of the appellant, the nature of his conduct, and the available programs and facilities, Seidel's rehabilitation could be completed so he would pose no threat to the community after discharge from custody.

Appellant contends that the record refutes the other findings, but the factors already discussed have been held sufficient to allow certification. In *State v. Mouser*, 714 S.W.2d 851 (Mo.App.1986), the factors "most convincing in support of certif[ication] ... were: (1) the seriousness of the offense; (2) the protection of the community; (3) the fact that the offense alleged was against a person; and (4) the lack of rehabilitative programs and facilities available to the juvenile court...." *Id.* at 857. *See also State v. Garbe, supra.* While there is

evidence supporting retention of jurisdiction by the juvenile court, the criteria recited above would alone support transfer of this case to the court of general jurisdiction.

As for the other findings, the most important is the limited time that the Division of Youth Services could retain jurisdiction over appellant. If appellant had been committed to the division at the time of the court's order dismissing the petition, custody would not have lasted even eleven months.[2] While this is not one of the § 211.071.6 criteria, other courts have considered this as relevant to the suitability of the juvenile framework. In *State v. Tate, supra,* the court held it "reasonable for the juvenile court to conclude that from a practical standpoint only two years of rehabilitative confinement was available and that based upon the crime and defendant's past history such a period was not adequate to rehabilitate defendant and more important, to protect society from him." *Id.* at 72. In *State v. Kemper*, 535 S.W.2d 241 (Mo.App. 1975), the court decided that five and one-half years were not sufficient time to rehabilitate the juvenile. *Id.* at 251. Finally, the supreme court held that "the juvenile court has the duty to review the amenability of the juvenile to treatment resources *presently available." In Interest of A.D.R., supra,* at 582. The legislature has declared a minimum punishment for attempted armed robbery of five years. §§ 558.011, 564.011 and 569.020. Consequently, the minimal time that appellant would be confined, coupled with the serious nature of his crimes, was a relevant consideration on the suitability of the juvenile framework.

The factors referred to in the order dismissing the juvenile petition are significant and relevant. While the serious nature of the crimes is the dominant consideration, many other criteria played a role in shaping the juvenile court's order. Consequently,

**2.** Section 211.041 provides that the jurisdiction of the juvenile court may be retained until the child is twenty-one, "except in cases where he is committed to and received by the division of youth services...." *Id.* If the appellant had been committed, § 219.021 provides that custo- dy must terminate upon the child's eighteenth birthday. § 219.021.1. Consequently, such custodial commitment could only have lasted until September 30, 1987, appellant's eighteenth birthday.

in the totality of the circumstances, we find no abuse of discretion in the juvenile court's relinquishment of jurisdiction or the trial court's denial of the motion to dismiss the information. The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.