**STATE of Missouri, Respondent,**

v.

**Stacy Mechelle SIMPSON, Appellant.**

**No. 15001.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 14, 1992.

Curtis E. Woods, of Spencer, Fane, Britt & Browne, Kansas City, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

## PER CURIAM.

On September 3, 1985, Gail Janet Simpson died as a result of gunshot wounds to her head. She was the mother of defendant, Stacy Mechelle Simpson (Stacy), who was born June 23, 1971. This tragedy commenced an almost seven-year odyssey of Stacy's case which touched all levels of the Missouri court system, traveled through two federal courts and, finally, back here on direct appeal. That circuitous path will be briefly related for understanding of this tardy appeal.

Upon Stacy's "Alford"[1] plea of guilty to a reduced charge of voluntary manslaughter, she was sentenced on November 3, 1986, to an eleven-year term of imprisonment. This appeal results from Stacy's complaints concerning the circumstances of her plea and objection to the jurisdiction of the Jasper County Circuit Court.

### FACTS

On September 13, 1985, a Petition was filed in the Circuit Court of Bates County, Missouri, Juvenile Division, alleging that Stacy, at the time a child age fourteen years, had knowingly caused the death of her mother. Promptly, the court ordered a psychiatric evaluation of Stacy which was soon performed and a report made. The examining psychiatrist recommended Stacy be returned to the juvenile court for disposition of her case because of her "young age and relative emotional immaturity." Another report indicated Stacy's "psychosocial development is clearly not advanced beyond adolescence and in some respects, she is even more immature."

On March 11, 1986, the juvenile officer filed a motion to dismiss the Petition and to proceed against Stacy under the general law for commission of a felony. It alleged Stacy was not a proper subject to be dealt with under the Juvenile Code for the reason that the alleged offense "involved extreme viciousness and violence" and that Stacy "is beyond the rehabilitative care, treatment and services available to this court and cannot benefit further therefrom." On March 19, 1986, the juvenile court found those allegations to be true, ordered the Petition be dismissed and that Stacy may be prosecuted under the general law.

After a preliminary hearing, an Information was filed on May 7, 1986, charging Stacy with murder in the first degree under § 565.020.1, RSMo Supp.1984. On May 23, 1986, Stacy filed a motion to dismiss the Information and remand the case to juvenile court on the ground that the certification of the juvenile court was not supported by the evidence.

After Stacy's motion for change of venue, the Bates County Circuit Court on June 27, 1986, transferred the case to the Circuit Court of Jasper County, Missouri. Stacy's motion to dismiss the Information and remand to the juvenile division was denied on August 1, 1986.

On September 16, 1986, Stacy entered an Alford plea of guilty to an Amended Information charging her with voluntary manslaughter under § 565.023.1(1), RSMo Supp.1984. Under the terms of a prior plea agreement, the prosecutor agreed to reduce the charge from first degree murder to voluntary manslaughter, recommend five years' probation, supervised by a juvenile division of an appropriate circuit court,

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), gave birth to a type of plea in which a defendant pleads guilty but maintains he or she is innocent. Such a plea is much like a *nolo contendere* plea.

and request a presentence investigation. After a hearing the court accepted Stacy's plea. At that time, the court informed Stacy it was not bound by the prosecutor's recommendation and the court could sentence her to any authorized term of punishment. Stacy indicated she understood this authority of the court.

On October 3, 1986, Stacy informed the court she had discharged her attorney. On October 10, 1986, she filed a pro se pleading entitled "Request of My Attorney to Withdraw Guilty Plea," where she alleged, at the time she entered her guilty plea, "I did not understand the consequences of my guilty plea and, after having had time to think about it, I am hereby instructing [my attorney] to inform the Court that I do withdraw my guilty plea to voluntary manslaughter."

Prior to the sentencing hearing of November 3, 1986, Stacy retained new counsel who filed a motion to withdraw guilty plea on November 3, 1986. That same day new counsel requested the hearing on Stacy's motion be continued which the court denied. Immediately the court conducted an evidentiary hearing on the motion to withdraw guilty plea, and the motion was denied. The court found that Stacy "knowingly and voluntarily waived her rights to a jury trial and her rights pertaining to a trial by jury. Court further finds that neither the State nor the Court has violated the plea bargain [Stacy] entered into in this case." The court then proceeded to sentence Stacy, at the time fifteen years old, to eleven years in an adult state penitentiary. Prior to sentencing Stacy, the trial court did not inform her the plea bargain agreement was rejected nor afford her the opportunity to withdraw her plea.

On November 13, 1986, Stacy filed a Notice of Appeal in this Court. While her appeal was pending, Stacy filed, pro se, in the Supreme Court, a Petition for Writ of Habeas Corpus on March 26, 1987. That petition was dismissed by the Supreme Court on April 14, 1987.

Stacy's legal counsel failed to file the record on appeal in this Court, and we dismissed the appeal on May 1, 1987.

On December 9, 1988, Stacy filed a Rule 24.035 motion in Jasper County Circuit Court. Her motion was summarily denied on January 3, 1989.

On February 6, 1989, Stacy filed a federal habeas corpus petition pursuant to § 2254 of Title 28, United States Code, in the United States District Court for the Western District of Missouri. After an evidentiary hearing on May 15, 1990, Judge Elmo B. Hunter granted the writ on the grounds that Stacy was unconstitutionally denied the right to withdraw her plea which was not made voluntarily and knowingly. *See Simpson v. Camper*, 743 F.Supp. 1342 (W.D.Mo.1990).

The State of Missouri appealed to the United States Court of Appeals for the Eighth Circuit. On March 4, 1991, that Court filed an opinion which determined that Stacy's challenge to the validity of her plea had never been presented to the Missouri courts and stated its uncertainty whether she had exhausted her state remedies. *See Simpson v. Camper*, 927 F.2d 392 (8th Cir.1991). The Eighth Circuit held that Stacy's avoidance of a procedural bar to her federal habeas corpus claims rested on her contention that she was denied effective assistance of counsel on her direct appeal to this Court in 1987. The State submitted that Stacy's remedy was a motion to this Court to recall the mandate. The Eighth Circuit held in abeyance its decision on Stacy's habeas corpus action pending the outcome of the motion to recall the mandate in this Court.

Such motion was filed here on May 3, 1991, which was later sustained. This appeal followed. Additional facts, necessary to our determination, will be set forth under each point.

## APPLICATION OF THE ESCAPE RULE

◼ Preliminarily, we address the State's contention that the escape rule should be applied here and the appeal dismissed. The State believes the escape rule applies because between the time of Stacy's guilty plea and sentencing, she absented herself from her juvenile services-ap-

pointed foster home and failed to keep a court-ordered appointment with Dr. Gordon.

The facts upon which the State relies to justify application of the escape rule are as follows: At Stacy's guilty plea the court ordered Stacy to undergo an evaluation by Dr. Gordon as soon as possible, with a report to be filed with the court before sentencing.

The only evidence in the record regarding Stacy's failure to keep the doctor's appointment came from her testimony at the sentencing hearing. She explained, "We called down here, sir, and tried to find out when that was scheduled, and they would not tell us."

Concerning leaving the foster home, Stacy testified as follows:

I didn't leave the Fitch [foster] home. I left early that morning, went to school, uh, went to a football game, came back to the Fitches' house, waited for the Fitches, nobody showed up, got a couple of my clothes, called the courts, told the courts where I was at, gave them the address, gave them the phone number, and waited for the Fitches, and nobody showed up, so we left.

From the meager record it appears Stacy left with her grandmother and resided with her until sentencing date. The State does not take issue with that fact.

In essence, the State argues that Stacy's failure to keep the court-ordered appointment with Dr. Gordon and her absence from the foster home is sufficient to invoke the escape rule. For the reasons which follow, we decline to expand the escape rule to the factual situation before us. However, our position should not be misconstrued because in no way do we condone such actions of Stacy nor are we so naive as to believe Stacy made a sincere effort to comply with directions of the court.

As noted by the State, the escape rule was first applied in *State v. Carter*, 98 Mo. 431, 11 S.W. 979 (1889), where the Supreme Court dismissed the appeal of a convicted murderer who escaped custody and remained at large pending appeal. Since this early application of the rule, it has been expanded by Missouri appellate courts to factual situations unlike *Carter*. For example, the escape rule was applied in *State v. Thomas*, 792 S.W.2d 66 (Mo.App.1990) (where the jury returned a guilty verdict but prior to sentencing defendant absented himself from the courtroom without permission); *Rulo v. State*, 804 S.W.2d 866 (Mo.App.1991) (where defendant entered a plea of guilty but fled the courtroom prior to sentencing); *State v. Woods*, 812 S.W.2d 267 (Mo.App.1991) (where after conviction defendant failed to appear for sentencing).

*State v. Kearns*, 743 S.W.2d 553 (Mo. App.1987), provides a thorough discussion of the rule and indicates "the main reason for the development of the rule lies in the inherent need for a court to have control over those who come before it seeking relief." *Id.* at 554. Control over Stacy was not lacking in either the trial court or here.

Stacy appeared voluntarily at her sentencing, and no effort from the State was necessary to cause her appearance. Stacy testified she notified the court of her address and telephone number when she left the foster home. No contrary evidence is in the record. Finally, the court was not powerless at the sentencing hearing to arrange for an examination of Stacy by Dr. Gordon. Despite the lack of a report from Dr. Gordon, the court proceeded to sentence Stacy and mentioned no further need of such a report. In short, we cannot equate Stacy's actions with an escape from control of the court.

We have read the cases cited by the State and find none that factually apply here. This Court has recently recognized "that not every disappearance, of whatever duration and under all circumstances, results in forfeiture of the right to appeal." *State v. Gillispie*, 790 S.W.2d 519, 520 (Mo. App.1990). *See Sinclair v. State*, 708 S.W.2d 333 (Mo.App.1986), where we held an attempted escape did not invoke the escape rule. We hold the circumstances here do not result in the forfeiture of Stacy's right to appeal.

## ISSUE OF VIOLATION OF RULE 24.02(d)(4) [2]

We first address Point II of Stacy's four points relied on which reads:

The Circuit Court of Jasper County erred and violated the requirements of Supreme Court Rule 24.02(d)(4) and Schellert v. State, 569 S.W.2d 735 (Mo.banc 1978) in not informing [Stacy] of its rejection of, or intention to reject, the plea agreement entered into between [Stacy] and [State], not affording [Stacy] an opportunity to withdraw her plea of guilty and refusing to allow her to withdraw her plea of guilty after rejecting the plea agreement and sentencing her to incarceration as an adult contrary to the terms of the plea agreement thus rendering involuntary [Stacy's] previous Alford plea.

Initially, the State asserts this point is not properly preserved for our review because Stacy never moved to withdraw her guilty plea for rejection of the plea agreement. The State argues Stacy is attempting to convict the trial court of error which was not presented to that court, relying on State v. Jones, 594 S.W.2d 932, 938 (Mo. 1980), and State v. Crow, 486 S.W.2d 248 (Mo.1972). Assuming the State is correct, we have the discretion to review for plain error affecting substantial rights upon a finding that manifest injustice or a miscarriage of justice has resulted from such error. Rule 30.20.

No exact formula is available for determination of plain error. However, we are guided by the following statement from State v. Miller, 604 S.W.2d 702, 706 (Mo. App.1980).

Unfortunately, no talismanic method exists for determining "plain error". It can be said, however, that "plain error" is "prejudicial error" which so substantially affects the rights of an accused that "manifest injustice" or a "miscarriage of justice" inexorably results if left uncorrected. Thus, "plain error" is a unique and elusive concept because of its lack of fixed dimension. Consequently, it has been judicially recognized that the existence or non-existence of "plain error" must be coped with on a case to case basis and rebalanced each time against the particular facts and circumstances of each case.

Plain error review is applicable here because the trial court ignored the requirements of Rule 24.02(d)(4) and Schellert v. State, 569 S.W.2d 735 (Mo.banc 1978). As a result, substantial rights of Stacy were affected, resulting in manifest injustice or miscarriage of justice.

Rule 24.02 provides for pleas in felony and misdemeanor cases and applies to Stacy's plea. Rule 24.02(d) reads, in pertinent part:

. . . .

1. ... The prosecuting attorney and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty to a charged offense or to a lesser or related offense, the prosecuting attorney will do any of the following:

   (A) dismiss other charges; or

   (B) make a recommendation ... for a particular sentence; or

   . . . .

2. ... If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court ... at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

   . . . .

4. ... If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court ... that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant

---

**2.** Rule references are to Missouri Rules of Court (1986), unless otherwise indicated.

than that contemplated by the plea agreement.

*Schellert* was decided September 12, 1978. Rule 24.02 became effective, as amended, January 1, 1980, with a later amendment effective January 1, 1982. Both *Schellert* and Rule 24.02 were in effect well before Stacy's plea.

On September 16, 1986, the trial court accepted Stacy's Alford plea and carefully followed the plea agreement procedure in Rule 24.02(d)(1) and (2). The plea agreement was disclosed in open court where the prosecutor agreed to reduce the murder charge to voluntary manslaughter, recommend five years' probation with juvenile court supervision and request a presentence investigation. The court ordered a presentence investigation and apparently deferred acceptance or rejection of the plea agreement to the sentencing date of November 3, 1986. At no time did the court indicate the plea agreement was rejected.

On November 3, 1986, the trial court heard and denied Stacy's motion to set aside her guilty plea filed first on October 10, 1986. Obviously, Stacy was unaware in October that the plea agreement would be rejected in November. We believe it is significant that Stacy moved to withdraw her guilty plea at a time she could reasonably believe she faced only five years' probation. Yet, the trial court denied her motion and immediately sentenced a fifteen-year-old girl to eleven years' imprisonment.

At no time did the trial court follow the provisions of Rule 24.02(d)(4). By that provision the court was required to advise Stacy of rejection of the plea agreement, advise her the court is not bound by the plea agreement, and afford her the opportunity to withdraw her guilty plea. Had the court followed that procedure it is abundantly clear Stacy would have withdrawn her guilty plea in view of her earlier requests.

The facts in *Schellert* are identical to the present case. There, (1) the prosecutor told defendant and the court the state would recommend probation upon defendant's guilty plea, (2) the trial court informed the defendant the court was not bound by the prosecutor's recommendation, (3) the court did not inform defendant the recommendation was rejected and sentenced him to five years' imprisonment. The Supreme Court reversed and remanded the case for entry of a new plea.

The precise question in *Schellert* was whether "as a matter of substantial fairness, a trial court should afford a criminal defendant the opportunity to withdraw a plea of guilty in any case in which the judge determines not to grant the sentence concessions contemplated by a plea agreement or plea bargain made between the defendant and the prosecutor." 569 S.W.2d at 737. That question was resolved in the following manner:

> If the plea agreement contemplates the granting of sentence concessions by the trial judge, he should give the agreement due consideration, but not withstanding its existence reach an independent decision on whether to grant sentence concessions. If the court rejects the plea agreement, either at the time of the plea proceedings or at the time of sentencing, the court shall, on the record, inform the parties of that fact, advise the defendant personally in open court ... that the court is not bound by the plea agreement, afford the defendant the opportunity then to withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

*Id.* at 739.

The provisions of Rule 24.02(d)(4) are almost identical to the language just quoted from *Schellert*. Here, the trial court was clearly required to inform Stacy of its rejection of the plea agreement and afford her the opportunity to withdraw her guilty plea. Failure to do so is error.

Contrary to the State's view, *State v. England*, 599 S.W.2d 942 (Mo.App.1980), does not require a different result here. This court merely pointed out "[t]he weight of federal authority holds, contrary to *Schellert*, that the trial court's non-acceptance of the government's sentence recom-

mendation does not constitute a rejection of the plea agreement within the meaning of Fed.R.Crim.P. 11(e)(4),[3] where the defendant bargained merely for a sentence recommendation, rather than disposition, and knew that the recommendation would not be binding upon the trial court and the government carried out the agreement by making the recommendation." *Id.* at 946.

The difference between *Schellert* and *England* was succinctly stated in *England* when we said:

> In *Schellert* the prosecutor made a recommendation and the court did not follow that recommendation. In the case at bar the prosecutor made a recommendation and the recommendation was carried out by the court.

*Id.* at 947.

In *England,* the prosecutor agreed to recommend that a presentence investigation be conducted and the court consider that report in sentencing. The plea bargain was exactly followed by the prosecutor and the court. The presentence report recommended probation, but the court imposed a two-year prison sentence. We determined imposition of the prison sentence did not violate the plea bargain. *England* is unlike the facts before us.

For the trial court's failure to inform Stacy of rejection of the plea agreement and failure to afford her the opportunity to withdraw her guilty plea, we must set aside the guilty plea and remand for entry of a new plea. Having so held, Stacy's Points I and III require no discussion.

## JURISDICTIONAL ISSUE

■ Regardless of our reversal and remand of the case, we must address Stacy's last point. She claims neither the Circuit Court of Bates County nor Jasper County had jurisdiction over her case because the Circuit Court of Bates County, Juvenile Division, abused its discretion in certifying her for prosecution under the general law since the certification was unsupported by

evidence and against the weight of the evidence.

The State contends Stacy has waived any claim to relief on this point because of her guilty plea. The State relies on the rule that direct appeal from a guilty plea proceeding is " 'restricted to the question of the jurisdiction of the subject matter and the sufficiency of the criminal charge,' " relying on *Tygart v. State,* 752 S.W.2d 362, 365 (Mo.App.1988), *State v. LePage,* 536 S.W.2d 834, 835 (Mo.App.1976), and *State v. O'Neal,* 626 S.W.2d 693, 694 (Mo.App. 1981). These cases involve a defendant who pleads guilty voluntarily. The rule does not apply here because we have determined Stacy's plea must be set aside for the trial court's violation of Rule 24.02. Our action eliminates any waiver argument opposing Stacy's position on this point.

■ Appellate review of this point is limited to a determination of whether in the totality of the circumstances the court abused its discretion. *State v. Seidel,* 764 S.W.2d 517, 518 (Mo.App.1989).

Dismissal of a juvenile proceeding to allow prosecution of the juvenile under the general law is governed by § 211.071.[4] That statute sets forth eight factors for the Court's determination of whether the juvenile is a proper subject to be dealt with under the Juvenile Code. The factors are:

> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
>
> (2) Whether the offense alleged involved viciousness, force and violence;
>
> (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
>
> (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;

---

**3.** Rule 24.02(d) is almost identical to Rule 11(e)(4), Fed.R.Crim.P.

**4.** We refer to § 211.071, RSMo Supp.1984, which governed Stacy's juvenile proceeding.

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

(6) The sophistication and maturity of the child as determined by consideration of his home and environmental situation, emotional condition and pattern of living;

(7) The program and facilities available to the juvenile court in considering disposition; and

(8) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court.

On March 19, 1986, the juvenile court ordered the petition dismissed and made the following findings:

. . . .

6. That after having considered all of the relevant factors as set forth in Section 211.071, RSMo. 1984 Supplement, the Court has determined that the above juvenile is not a proper subject to be dealt with under the provisions of the juvenile code for the following reasons:

A. The offense alleged is of a serious nature, and involved viciousness, force and violence.

B. The offense alleged was against another person, and allegedly resulted in the death of such other person.

C. The programs and facilities available to the Court would not be suitable for placement of the above juvenile.

D. It appears unlikely that the above juvenile would benefit from the treatment or rehabilitative programs available to the Court.

The thrust of Stacy's argument seems to be that the juvenile court findings only addressed some of the eight factors found in § 211.071, and since the evidence supporting the findings was not overwhelming, certification was improper. We disagree with her.

■ It is not necessary for the Court to give equal weight to each of the eight factors listed in § 211.071, nor necessary for the Court to make an express finding on each factor. *Seidel*, 764 S.W.2d at 518. Here, the Court considered all of the factors in the statute and made express findings involving criteria (2), (3), (7), and (8). This approach by the Court is sufficient under *Seidel.*

■ The nature of the offense is a highly significant criterion, as well as the fact that the alleged offense was against a person. *State v. Mouser*, 714 S.W.2d 851, 857 (Mo.App.1986); *Seidel* at 518–19. The record is undisputed that Stacy was charged with the murder of her mother. The death resulted from three gunshot wounds to the head and one to the back area. Without question, the alleged offense involved viciousness, force, and violence against another person. "The quantum of evidence pointing to the juvenile's guilt is of no concern to the determination to waive jurisdiction." *State v. Tate*, 637 S.W.2d 67, 71 (Mo.App.1982). There, a sixteen-year-old juvenile was allowed to stand trial for the murder of a thirteen-year-old girl. The Court said, "[T]he bludgeoning to death of a 13-year-old girl is a violent and vicious crime, the seriousness of which can hardly be disputed. It is strong evidence that the perpetrator constitutes a serious threat to society." *Id.* The same reasoning applies to Stacy's case and supports the court's findings.

The remaining criteria addressed by the Court is supported by the testimony of Rebecca Clark, Chief Juvenile Officer, who testified at the certification hearing that the Division of Youth Services for her circuit did not have available programs, facilities, or resources to allow proper rehabilitation of Stacy. William Bailey, Program Administrator for the Missouri Division of Youth Services, testified the typical stay for a youth in his facility was between five and six months. He testified that a youth charged with homicide would receive the same treatment as one who committed shoplifting, burglary, or truancy. In his opinion, he had no programs or facilities suitable for a fourteen-year-old female who had committed a homicide. Such evidence supports the further findings of the juvenile court. In *State v. Garbe*, 740 S.W.2d

266 (Mo.App.1987), the juvenile court order relinquishing jurisdiction was based on (1) seriousness of the offense (assault with a knife), and (2) unavailability of juvenile facilities adequate for dealing with the needs presented by the case (termination of juvenile jurisdiction in sixteen months from date of offense). Despite considerable evidence pointing to retention of juvenile court jurisdiction, the reviewing court said, "We are unable to say that there was any abuse of discretion ... in deciding to relinquish juvenile court the jurisdiction...." *Id.* at 268.

Persuasive also is the determination of Judge Hunter on this issue that "we do not find that the evidence presented to the juvenile court at the certification hearing was so insufficient as to rise to the level of a due process violation." *Simpson v. Camper*, 743 F.Supp. at 1347.

Even though the psychiatric evaluation of Stacy included a recommendation that she be dealt with by the juvenile court, we cannot find any abuse of discretion in the juvenile court's determination or of the trial court's denial of Stacy's motion to dismiss the Information. This point is denied.

Therefore, the cause is remanded, and Stacy is remanded to the trial court for entry of a new plea to the State's charge.